UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x     Index No. 25-cv-03317

JERRY GEZA TOTH, individually and on behalf of T.T.,

                                                     Plaintiff,

           -v-                                          **COMPLAINT**

NEW YORK CITY DEPARTMENT OF EDUCATION,

                                                      Defendant.

-----------------------------------------------------------------------x

     ANTON J. MIKOFSKY, attorney for Plaintiff Jerry Geza Toth, on behalf of plaintiff's son T.T., alleges as follows against Defendant New York City Department of Education:

## INTRODUCTION

1. This action concerns the education of T.T., a 17-year-old student with autism.

2. T.T.'s autism causes significant developmental deficits and interfering behaviors, including severe speech impairments.

3. T.T. resides in New York City and is a student within the jurisdiction of the Defendant.

4. The New York City Department of Education ("DOE") is a school district organized under New York State law, serving as the local education agency responsible for T.T.'s education.

## JURISDICTION AND VENUE

5. This Court has jurisdiction under 20 U.S.C. §§ 1415(i)(2) and (3), 34 C.F.R. §§ 300.516 and 300.517, and 28 U.S.C. §§ 1331 and 1367, without regard to the amount in controversy. Venue is proper as Plaintiff and Defendant reside or conduct business within this district.

1

PROCEDURAL BACKGROUND

6. In a prior case, Judge James Orenstein, in his March 14, 2016, Report and Recommendations, described a December 28, 2012, IEP as "regressive," noting:

> "Of course, if the DOE were to issue such a regressive IEP, Toth would have the right to initiate a new lawsuit. The DOE would be hard pressed to dismiss any such new action as moot, even if the case could not be concluded within a single school year, because at that point it would no longer be mere speculation that the prior IEP would be repeated. Moreover, Toth might also be able to reopen this action on the basis of new evidence showing that the dismissal on mootness ground had been erroneous. See Fed. R. Civ. P. 60(b)."

Report and Recommendations, footnote 4, Case 1:14-cv-03776-SLT-JO, Document 48, Filed 03/14/16, Toth v. New York City Department of Education.

7. In *Jerry Geza Toth, on behalf of T.T., v. City of New York Department of Education,* Case No. 17-383-cv (2d Cir. 2018), the Second Circuit, held that Plaintiff's claim for compensatory education was not moot, citing an August 2016 IEP that eliminated ABA therapy: "The fact that the DOE has now issued a new IEP that eliminates ABA therapy establishes that Toth's concern is no longer speculative. Indeed, the magistrate judge even recognized that if the DOE issued an IEP such as the one it now has, Toth's argument 'that the prior IEP would be repeated' 'would no longer be mere speculation.'" J.A. 402 n.4. The Court found a sufficient likelihood of an inappropriate IEP to constitute a case or controversy.

8. On 4/4/2024, Impartial Hearing Officer ("IHO") Edward Perkins, Esq., issued the decision in Exhibit "A" granting Plaintiff's request for prospective tuition at Gersh Academy and 20 hours per week of home-based 1:1 ABA therapy for T.T.

9. For the 2024-2025 academic year, the DOE did not evaluate T.T., did not issue an IEP. Instead the DOE issued the School Location Letter in Exhibit "B".

2

RELEVANT FACTS

**A. T.T.'s Educational Needs Require 1:1 Instruction**

10. In June 2010, Dr. Xue J. Ma, a psychologist with the Early Intervention Program, diagnosed T.T. with autism, noting he had lost nearly all speech, retaining only five to ten words.

11. From June 2010 to August 2011, based on Dr. Ma's recommendation, T.T. received 20 hours per week of home-based 1:1 ABA therapy through the Early Intervention Program. During this period, T.T. mastered the alphabet at a level comparable to non-disabled peers, began singing with other children, and was successfully toilet-trained at an ABA-based school. With consistent 1:1 instruction, T.T. has since learned to play Beethoven sonatinas and Mozart rondos. T.T. learned addition, subtraction, multiplication, division, geometry, algebra.

12. For the 2024-2025 academic year, the DOE failed to consider 1:1 instruction. The DOE proposed a six-student 6:1:1 classroom. T.T.'s disability prevents him from meaningfully accessing education in a classroom setting without sufficient 1:1 instruction. The DOE's June 26, 2024, School Location Letter proposing a 6:1:1 classroom was inadequate to meet T.T.'s needs.

13. Plaintiff served a 10-day notice of unilateral placement at Gersh Academy with 20 hours per week of home-based 1:1 ABA therapy.

14. Plaintiff filed a due process complaint, to which the DOE failed to respond with an answer.

15. In IHO Case #284080, before IHO Carina Patritti, Esq., Plaintiff requested an Independent Educational Evaluation ("IEE") as preliminary relief. IHO Patritti denied

the request based on erroneous facts, relying on unsworn, false representations by DOE attorney Averi Abuto that T.T. had received prior IEEs. In her Decision IHO Patritti misrepresented that parents had withdrawn parents' request for an IEE before the conduct of a hearing. The DOE's custom or practice of falsifying legal records denied T.T. due process under *Monell v. Dept. of Social Services*, 436 U.S. 658, 694 (1978). To falsify legal records constitutes egregious conduct that shocks the conscience, see *Velez v. Levy,* 401 F.3d 75, 93-94 (2d Cir. 2005).

16.   Dr. Karen Hopkins, M.D., a Professor of Pediatrics and Developmental-Behavioral Pediatrician at NYU School of Medicine (curriculum vitae, Exhibit "C"), observed T.T. many times over seven years, reviewed teacher and therapist reports. Dr. Hopkins prescribed at least 20 hours per week of 1:1 ABA instruction (testimony, Exhibit "D").

17. For the 2024-2025 academic year, the DOE failed to evaluate T.T., issue an IEP, hold a resolution meeting, engage in settlement discussions, file an answer, or present evidence or testimony.   IHO Patritti rejected Plaintiff's unopposed expert testimony.

18. Plaintiff presented testimony from four witnesses who had taught T.T.  All witnesses supported T.T's need for 1:1 instruction.  IHO Patritti disregarded the testimony.

19.   While appealing Case #284080, Plaintiff filed in DOE's hearing office a due process complaint (Exhibit "E") requesting a pendency order. The Hearing Office did not acknowledge the complaint. The Hearing Office assigned no docket number, appoint on IHO to rule on pendency.

4

**B.   DOE's Denial of 1:1 Instruction Denies T.T. an Education.**

20. T.T. cannot learn in a classroom without 1:1 supervision due to his disability. The DOE's June 26, 2024, placement in a 6:1:1 classroom, despite overwhelming evidence of T.T.'s need for 1:1 instruction, denied him a Free Appropriate Public Education ("FAPE").  *C.F. ex rel. R.F. v. New York City Dept. of Educ.*, 746 F.3d 68 (2d Cir. 2014).

21. The DOE provided no evidence that T.T. could learn in a six-student classroom, waiving any such argument, per *Collins v. Marina-Martinez,* 894 F.2d 474, 481 n.9 (1st Cir. 1990)( "It is settled beyond peradventure that issues mentioned in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.")

**C. Applicable Law**

22.  This action presents a case or controversy regarding T.T.'s education for the 2024-2025 and 2025-2026 academic years under:

   a. The Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq.;

   b. The Due Process Clause of the Fourteenth Amendment, 42 U.S.C. § 1983;

   c. Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12111 et seq.;

   d. New York City Human Rights Law ("NYCHRL"), N.Y. Admin. Code § 8-101 et seq.

COUNT I: IDEA

23.  The IDEA mandates that school districts issue an Individualized Education Program annually for each disabled student, tailored to their unique needs, per 20 U.S.C. § 1414(d)(2), 34

5

C.F.R. § 300.342(a), and 8 N.Y.C.R.R. § 200.4(d).

24. The IDEA requires the Committee on Special Education ("CSE") to review parent-provided evaluations and include parents in decisions about their child's educational placement. 20 U.S.C. § 1414(c)(1)(A)(i), 34 C.F.R. § 300.305(a)(1)(i), and 8 N.Y.C.R.R. § 200.4(b)(5)(i).

25. The DOE failed to issue an IEP for T.T. for the 2024-2025 academic year, violating its obligation to provide personalized instruction and support services, per B*d. of Ed. of Hendrick Hudson Cent. Sch. Dist. v. Rowley,* 458 U.S. 176, 203 (1982).

26. The DOE's failure to involve Plaintiff in developing an educational plan and the DOE's refusal to provide 1:1 instruction denied T.T. a FAPE. *C.F. ex rel. R.F. v. New York City Dept. of Educ.,* 746 F.3d 68 (2d Cir. 2014).

### A. DOE's Policies Violate the IDEA

27. The DOE's systemic failure to provide IEPs and consider 1:1 instruction for students like T.T. violates the IDEA's core requirement of individualized education.

29. The DOE's administrative hearing process, staffed by its employees, is structurally incapable of addressing requests for 1:1 instruction, rendering exhaustion of administrative remedies futile. *Heldman v. Sobol*, 962 F.2d 148 (2d Cir. 1992).

30. The DOE's practice of denying 1:1 instruction reflects a policy or custom that prioritizes employee interests over students' rights, violating due process.

### B. Systemic Violations and Futility of Administrative Remedies

31. The DOE's refusal to grant a pendency hearing in response to Plaintiff's complaint (Exhibit "E") constitutes a systemic violation of the IDEA, as the Hearing Office failed to assign a docket number or IHO.

32. This systemic failure renders administrative remedies inadequate, falling within the

6

futility exception, per J.S. ex rel. N.S. v. Attica Cent. Sch., 386 F.3d 107, 114 (2d Cir. 2004), and J.Z. v. N.Y.C. Dep't of Educ., 281 F. Supp. 3d 352, 362 (S.D.N.Y. 2017).

33. The prolonged administrative process cannot timely address T.T.'s needs, given his limited remaining years in the education system, per Burlington Sch. Comm. v. Mass. Dept. of Ed., 471 U.S. 359, 370 (1985).

34. Pursuing further administrative remedies would be futile, as the DOE's systemic violations cannot be corrected by its own hearing officers, per Honig v. Doe, 484 U.S. 305, 326-27 (1988).

### C. T.T. needs 1:1 instruction.

35. With 1:1 instruction, T.T. can access a regular education curriculum, consistent with the IDEA's preference for educating disabled students alongside non-disabled peers to the maximum extent appropriate, per Walczak v. Florida Union Free Sch. Dist., 142 F.3d 119, 122 (2d Cir. 1998).

36. T.T.'s least restrictive environment is a regular education curriculum with 1:1 instruction at a specialized private school and 20 hours per week of home-based ABA therapy.

COUNT II:   FOURTEENTH AMENDMENT (42 U.S.C. § 1983)

37.  Plaintiff incorporates all prior paragraphs as if fully set forth herein.

### A. The DOE denied the student due process of law.

38.  The DOE through its employees and agents produced false records of legal proceedings.  Attorney Averi Abuto on 12/17/2024 misrepresented that IEE's had been

performed in case #248309. IHO Carina Patritti misrepresented that the parents withdrew the parents' request for IEE's as preliminary relief. The DOE continues to employ these attorneys. The DOE ratified misrepresentations by its agents.

39. The DOE's issuance of a June 26, 2024, School Location Letter, Exhibit "B", without an evaluation or IEP, and the DOE's failure to provide a pendency hearing, arbitrarily deprived T.T. of his protected interest in an appropriate education, violating due process, see *Leebaert v. Harrington,* 332 F.3d 134, 139 (2d Cir. 2003).

39. The DOE's actions lacked any rational basis, as they disregarded T.T.'s documented need for 1:1 instruction, per Heller v. Doe, 509 U.S. 312, 320 (1993).

40. The DOE's systemic practice of assigning T.T. to inappropriate 6:1:1 classrooms from 2012 to 2024, despite 15 prior litigation losses, demonstrates willful disregard for T.T.'s educational rights, see *Plyler v. Doe*, 457 U.S. 202, 221-22 (1982).

41. The DOE's failure to pay portions of T.T.'s tuition and home-based services in August and September 2024, based on its erroneous claim that T.T. lacked pendency, further violated due process. *Goss v. Lopez,* 419 U.S. 565, 574 (1975).

**B. The DOE denied the student equal protection of the laws.**

42. The DOE provided appropriate educational programs to non-disabled students but consistently without rational basis, assigned T.T. to programs unlikely to produce learning, violating equal protection, see *Village of Willowbrook v. Olech,* 528 U.S. 562, 564 (2000). The DOE's discriminatory practices, disproportionately harmed T.T. based on his disability, per *Matson v. Bd. of Educ. of City Sch. Dist. of N.Y.,* 631 F.3d 57, 63 (2d Cir. 2011).

44. Consistent with a politicized City administration, IHO Patritti advertised a link between race and ethnicity and justice, https://www.latinojustice.org/en/latino-justice-team/carina-patritti-esq. From DOE's female Hispanic lawyer, Patritti on 12/18/2024 admitted an unsworn factual representation unsupported by evidence. Patritti rejected and disregarded uncontradicted, unopposed expert testimony supporting the student. The conduct evidences bias based on race, ethnicity.

COUNT III: ADA AND SECTION 504 OF THE REHABILITATION ACT

45. Plaintiff incorporates all prior paragraphs as if fully set forth herein.

46. T.T. is a qualified individual with a disability under the ADA and Section 504, 29 U.S.C. § 794. The DOE, a federally funded entity, had notice of T.T.'s disability and his need for 1:1 instruction to access education.

47. The DOE's refusal to provide 1:1 instruction and its issuance of an inadequate School Location Letter denied T.T. reasonable accommodations, violating the ADA and Section 504, per McBride v. BIC Consumer Prods. Mfg. Co., 583 F.3d 92, 96-97 (2d Cir. 2009).

48. The DOE's actions excluded T.T. from meaningful participation in educational programs, constituting discrimination based on his disability, per Parker v. Universidad de Puerto Rico, 225 F.3d 1, 4 (1st Cir. 2000).

49. The DOE's failure to follow expert recommendations and its disregard of unopposed testimony demonstrate gross misjudgment, violating Section 504 and the ADA, per Tennessee v. Lane, 541 U.S. 509, 531-32 (2004).

COUNT IV: NEW YORK CITY HUMAN RIGHTS LAW

50. Plaintiff incorporates all prior paragraphs as if fully set forth herein.000

51. Human Rights Law § 8-107 (17)(a) explicitly created a disparate impact cause of action for plaintiffs who can demonstrate "that a policy or practice of a covered entity [e.g., employer, housing provider] or a group of policies or practices of a covered entity results in a disparate impact to the detriment of any [protected] group" (Administrative Code § 8-107 [17] [a]).

52. The City law specifies a right of action for policies or practices that have a disparate impact and specifically prohibits any form of discrimination based on disability. The New York City Council also explicitly made "disparate impact" applicable to discrimination claims outside of the employment context (Administrative Code § 8-107 [17]). The FAC alleges DOE's conduct produced disparate impact upon students with disabilities.

54. The DOE's practice of issuing School Location Letters instead of IEPs and denying pendency hearings disproportionately impacts students with disabilities requiring 1:1 instruction, creating a disparate impact under NYCHRL, N.Y. Admin. Code § 8-107(17)(a).

55. Plaintiff seeks only injunctive relief under NYCHRL, exempting this claim from notice-of-claim requirements, per Johnson v. City of Peekskill, 91 A.D.3d 825, 826 (2d Dep't 2012).

56. The DOE's policies violate NYCHRL's broad protections against disability discrimination, per Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 278 (2d Cir. 2009).

REQUESTS FOR RELIEF

57. WHEREFORE, Plaintiff respectfully requests that this Court:

(a) Under Count I, issue a pendency order ensuring T.T.'s placement at Gersh Academy with 20 hours per week of home-based 1:1 ABA therapy;

(b) Under Count II, pursuant to 42 U.S.C. § 1983, grant equitable relief ordering an appropriate educational program tailored to T.T.'s needs;

(c) Under Count III, pursuant to Section 504 and the ADA, order the reasonable accommodation of placement at a specialized private school, 20 hours per week of home-based 1:1 ABA therapy;

(d) Under Count IV, the NYCHRL, grant injunctive relief, order an appropriate educational program;

(e) Award attorneys' fees, recoverable costs, such other relief as the Court deems just and proper.

Dated: June 8, 2025                                   Respectfully submitted,

                                                               /s/ Anton Mikofsky

ANTON MIKOFSKY
Attorney for Plaintiff
LAW OFFICE OF ANTON J. MIKOFSKY
236 West 26th Street, Ste. 303,
New York, NY 10001
Tel.: 212-867-6735
antonmikofsky@aol.com