CASE NUMBER: 599681- NYC: 248309

**FINDINGS OF FACT AND DECISION**

| | |
|---|---|
| Case Number: | 248309 |
| Student's Name: | Henry Terence Toth |
| Date of Birth: | 10/02/2007 |
| School District: | NYC Department of Education, District 25 |
| Hearing Requested by: | Mira Toth and Jerry Toth ("Parents") |
| Request Date/Date Complaint Filed: | 07/29/2023 |
| Date(s) of Hearing: | 02/22/2024 |
| Actual Record Closed Date: | 03/25/2024 |
| Date of Decision: | 03/25/2024 |
| Date of Distribution: | 03/26/2024 |
| Hearing Officer: | Edward Perkins, Esq. |

**NAMES AND TITLES OF PERSONS WHO APPEARED ON 02/22/2024**

For the Student:
Jerry G. Toth, Esq., Parent, Pro Se

For the Department of Education:
Michael J. Rutcostky, Esq., Attorney

## INTRODUCTION

This is a decision in a hearing under the Individuals with Disabilities Education Act ("IDEA"). The Parents filed this case on 05/15/2023. In the Due Process Complaint ("DPC"), the Parents allege that the Department of Education ("DOE") failed to offer the student a free appropriate public education ("FAPE") for the 2023-2024 school year.

Parents allege that the DOE failed to provide Student with a FAPE for the 2023-2024 school year, in that the DOE failed to develop an appropriate Individualized Education Program and/or offer an appropriate school location.  By way of relief, Parents seek an award of tuition reimbursement/direct funding for Student's attendance during the 2023-2024 school year at Private School, a private program not approved by the Commissioner of Education for the education of students with disabilities, along with the provision of 1:1 home-based ABA therapy and school-based speech therapy. *Id*. Considering the foregoing and as more fully discussed below, I find that (a) the DOE failed to meet its burden that it offered Student FAPE for the 2023-2024 school year, that (b) Private School in conjunction with home-based ABA services and school-based speech therapy provides Student with specially designed instruction sufficient to meet his needs, and (c) the equities support the requested relief.

## PROCEDURAL HISTORY

I was appointed on 05/17/2023. On 07/19/2023 the parties appeared for a pre-hearing conference.[1] On 07/26/20203, 08/23/2023, 09/29/2023, 10/13/2023, 11/08/2023, and 12/05/2023, the parties appeared for a status hearing. On 08/17/2023, an interim order on pendency was issued.[2] On 08/25/2023, an interim order granting consolidation with DPC #248309 was issued.[3] On 08/28/2023, an interim order granting funding for Independent Educational Evaluations (IEEs) was issued. On 10/02/2023, an interim order directing the DOE to provide Parents with Student's records was issued. On 01/07/2024, a scheduled hearing was adjourned. On 01/17/2024, a scheduled hearing was adjourned as the Parent was unable to appear due to a technical issue. On 02/22/2024, the parties appeared for a

---

[1] A more detailed account of the procedural history can be obtained by reviewing the transcripts for each pre-hearing appearance.
[2] The DOE opposed pendency, but then declined the opportunity to submit a brief stating their position on pendency. On numerous occasions throughout the early stages of these proceedings, the inexplicable conduct of the then-assigned DOE attorney necessitated delay.
[3] Case 248438 concerned the same student and school year, but only sought an Interim Educational Evaluation as relief.

hearing. The DOE did not present a case. *February 22, 2024 Transcript at 79.*[4] Parents submitted 20 exhibits into the record on consent of the DOE, who raised no objections.[5] *Tr. at 86*. Included in Parents' evidence were 5 affidavits of direct testimony. *Ex. AA, Ex. BB, Ex. CC, Ex. EE, Ex. FF, Ex. GG, Ex. II*. Parent rested and submitted a written closing statement. No closing statement was submitted by the DOE. Although only portions of the evidence are referenced by this decision, the testimony and documents were reviewed in full.

## FINDINGS OF FACT

After a full review of the record generated at hearing, I make the following findings of fact and determinations. Student is 17 years old and has a DOE disability classification of Autism. *Ex. J*. Student is known to and identified by the DOE as a student with a disability. *Id*.

On March 14, 2023, an Individualized Education Program ("IEP") meeting was held for Student for the 2023-2024 school year. *Id*. Following the meeting, the DOE proposed a public school. *Ex. L*. On June 21, 2023, Parents wrote to the DOE to reject the proposed program and placement, and provide notice that, absent an appropriate public-school program and placement, Student would be attending Private School for the 2023-2024 school year. *Ex. M*.

Private School is a full-time special education program focused on educating students with Autism. *Ex. BB-4*. Private School provides a program focused on Student's unique disability profile. *Id*. Private School provides students with a stable structure, a recognized educational methodology based on ABA instruction, and teachers who have experience educating students on the Autism spectrum. *Id*. At Private School, student made progress during the 2023-2024 school year. *See, e.g., Ex. CC, Ex. AA, Ex. BB*.

## CONCLUSIONS OF LAW AND ANALYSIS

*Burden*

---

[4] The February 22, 2024 Hearing Transcript will be cited in this decision using the following format: *Tr. at xx*, with "*xx*" representing the page number.
[5] A more detailed list of the admitted exhibits is attached as Appendix B, "Documentation Entered Into the Record," to this decision.

    School districts have the burden of proof, including the burden of persuasion and burden of production, in IDEA due process hearings, except that a parent or person in parental relationship seeking tuition reimbursement for a unilateral parental placement has the burden of persuasion and burden of production on the appropriateness of such placement (NYS Educ. Law § 4404(1)(c)).

*Prong I*

    The IDEA provides that children with disabilities are entitled to a FAPE. 20 U.S.C. § 1400 (d)(1)(A). A FAPE consists of specialized education and related services designed to meet a student's unique needs, provided in conformity with a comprehensive written Individualized Education Program ("IEP"). 34 C.F.R. § 300.13. A school district has offered a student a FAPE when (a) the board of education complies with the procedural requirements set forth in the IDEA; and (b) the IEP is developed through the IDEA's procedures and is reasonably calculated to enable the student to receive educational benefits. *Bd. of Educ. of the Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 206-07 (1982). In order to meet its substantive FAPE obligations, a district must prove that it offered the student in question an IEP that is "reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." *Endrew F. v. Douglas County Sch. Dist. RE-1*, 137 S.Ct. 988, 999 (2017).

    As to Prong I of the *Burlington/Carter* standard, the DOE conceded its burden at hearing. Specifically, the DOE Representative conceded on the record that Student was a child with a disability, and conceded that the DOE failed to provide Student with a FAPE for the 2023-2024 school year. *Tr. at 79*. Therefore, I find that the DOE failed to provide Student a FAPE for the 2023-2024 school year.

*Prong II*

    A private school placement must be "proper under the Act." *Florence County Sch. Dist. Four v. Carter*, 510 U.S. 7, 12, 15 (1993); *Sch. Comm. of Burlington v. Dep't of Educ.*, 471 U.S. 359, 370 (1985). This means that the private school must offer an educational program which met the student's special education needs. See *Gagliardo v. Arlington Cent. Sch. Dist.*, 489 F.3d 105, 112, 115 (2d Cir. 2007); *Walczak v. Fla. Union Free Sch. Dist.*, 142 F.3d 119, 129 (2d Cir. 1998). Parents seeking reimbursement "bear the burden of demonstrating that their private placement was appropriate, even if the IEP was inappropriate." *Gagliardo*, 489 F.3d at 112 quoting *Frank G. v. Bd. of Educ. of Hyde Park*, 459 F.3d 356, 364 (2d Cir. 2006) ("Subject to certain limited exceptions, 'the same considerations and

criteria that apply in determining whether the [s]chool [d]istrict's placement is appropriate should be considered in determining the appropriateness of the parents' placement.'").

Parents need not show that the placement provides every special service necessary to maximize the student's potential. *Frank G.*, 459 F.3d at 364-65. When determining whether a unilateral placement is appropriate, "[u]ltimately, the issue turns on" whether the placement is "reasonably calculated to enable the child to receive educational benefits." *Frank G.*, 459 F.3d at 364; see *Gagliardo*, 489 F.3d at 115. A private placement is appropriate if it provides instruction specially designed to meet the unique needs of a student. 20 U.S.C. § 1401(29); Educ. Law § 4401(1); 34 C.F.R. § 300.39(a)(1); 8 NYCRR § 200.1(ww); *Hardison v. Bd. of Educ. of the Oneonta City Sch. Dist.*, 773 F.3d 372, 386 (2d Cir. 2014).

The Second Circuit has set forth the standard for determining whether parents have carried their burden of demonstrating the appropriateness of their unilateral placement. No one factor is necessarily dispositive in determining whether parents' unilateral placement is reasonably calculated to enable the child to receive educational benefits. Grades, test scores, and regular advancement may constitute evidence that a child is receiving educational benefit, but courts assessing the propriety of a unilateral placement consider the totality of the circumstances in determining whether that placement reasonably serves a child's individual needs. To qualify for reimbursement under the IDEA, parents need not show that a private placement furnishes every special service necessary to maximize their child's potential. They need only demonstrate that the placement provides educational instruction specially designed to meet the unique needs of a handicapped child, supported by such services as are necessary to permit the child to benefit from instruction. *Gagliardo*, 489 F.3d at 112, quoting *Frank G.*, 459 F.3d at 364-65.

I find that Parents have met their burden by proving that the private program offered an educational program which met Student's needs under Prong II of the *Burlington/Carter* standard. Parents provided substantial evidence to prove that Private School was reasonably calculated to enable Student to benefit, and the evidence shows that Student is benefiting from his placement.

To meet their burden of proof, Parents provided ample documentary evidence, which was bolstered by the testimony of five witnesses. *See, e.g., Ex. AA, Ex. BB, Ex. CC, Ex. GG, Ex. II.* Notably, all of this testimony supports the appropriateness of Private School and the other requested relief, and

the DOE declined cross-examination of all witnesses. *Tr. at 77-78*. Thus, all of the testimony supporting the requested relief is uncontroverted.

The Assistant Principal of Private School described the specific program Student receives at Private School. *Ex. CC*. He is placed in a small class of six students, one teacher, one teacher's assistant, and a 1:1 paraprofessional for each student. *Ex. CC-2*. Small class sizes can be a factor weighing in favor of the appropriateness of the parent's unilateral placement. *Frank G.*, 459 F.3d at 365 (citing *Knable v. Bexley City Sch. Dist.*, 238 F.3d 755, 768 (6th Cir. 2001)). Small class sizes at a unilateral placement "come[] within the IDEA definition of 'special education,' namely, 'specially designed instruction . . . to meet the unique needs of a child.'" *Frank G.*, 459 F.3d at 365 (citing 20 U.S.C. § 1401(29)).

At Private School, Student was provided a curriculum which was individualized based on his needs. *See, e.g., Ex. CC-3*. He is also provided with behavioral supports and related services. *Id*. When a teacher at the unilateral placement adapts instruction to accommodate a student's unique needs, these factors weigh in favor of the appropriateness of the parent's unilateral placement. *Frank G.*, 459 F.3d at 365-66.

I find that the services and program described at Private School at the outset of the 2023-2024 school year were reasonably calculated to enable Student to benefit socially, emotionally, and academically. In addition, the record demonstrates that Student has actually benefitted from his placement at Private School. For example, he has made progress in his focus and reading comprehension. *Ex. CC-3*. Academic educational progress can be a factor weighing in favor of the appropriateness of the parent's unilateral placement. *Frank G.*, 459 F.3d at 365 (citing *Knable*, 238 F.3d at 768). While a student's progress at the private placement is not by itself sufficient to determine whether a placement is appropriate, that progress is a relevant factor in assessing the appropriateness of the placement. *Weaver v. Millbrook Cent. Sch. Dist.*, 812 F. Supp. 2d 514, 523 (S.D.N.Y. 2011).

Overall, the credible testimony demonstrates that Student is making continuous progress, demonstrating the appropriateness of his placement at Private School. The testimony regarding the appropriateness of his placement at Private School is bolstered by the Neuropsychological Evaluation, Health Statement, and Report, which recommend placement in a similar program. *Ex. G, Ex. H, Ex. I*.

For example, the Report recommends a program which utilizes individual support using the principals of ABA. *Ex. I-4*. Private School utilizes a methodology based on the principals of ABA. *Ex. BB-4*.

The program that was provided to Student by Private School was tailored to his unique disability profile and was designed to support his areas of social, emotional, behavioral, and academic need. In reviewing the record, the evidence establishes that Student's individual special education needs were considered by Private School and that the instruction he was offered was "reasonably calculated to enable the child to receive educational benefits." *Frank G.*, 459 F.3d at 364. I note that the DOE offered no compelling arguments concerning the appropriateness of Parent's unilateral placement. I further note that the DOE did not object to any document accepted into the record. All the evidence and testimony presented by Parent was credible and persuasive. Thus, I find that the unilateral placement at Private School was an appropriate placement for Student for the 2023-2024 school year.

I also find that the record demonstrates the appropriateness of Parent's request for 20 hours per week of 1:1 home-based ABA services. Parent provided the testimony of a home-based ABA instructor, who has worked with Student for six years. *Ex. BB*. The instructor's testimony is credible, based on her credentials, experience, and knowledge of Student. *Id*. The instructor testified that, given his educational history and unique disability profile, Student requires 1:1 ABA instruction to be able to benefit from and make progress in his placement at Private School. *Id*. This testimony is bolstered by the testimony of a licensed medical doctor. *Ex. AA*. The doctor testified credibly that in addition to his program at Private School, Student needs 20 hours per week of -home based ABA instruction. *Id*. The doctor noted a study which demonstrates that ABA therapy can help students with autism achieve major and lasting social, emotional, intellectual, and educational gains. *Id*. The DOE provided no testimony to the contrary, and did not cross-examine either of these witnesses, or provide any arguments whatsoever challenging the requested relief. *See Record Generally*. Thus, the weight of the evidence in the record strongly supports a finding that Student is entitled to 20 hours per week of home-based 1:1 ABA therapy.

Parent has also requested an award of 30 minutes per school day of speech therapy. The DOE effectively concedes that Student requires 30 minutes of speech-language therapy 5 times a week, as this recommendation was included on his most recent IEP. *Ex. J-31*. Therefore, I find student is entitled to 30 minutes of speech-language therapy, 5 times a week. In their closing brief, Parent noted that Private

School provides Student with 5 30-minute sessions of speech-language therapy per week. *See Parent's Closing Brief* at *12*.

The DOE also effectively concedes that Student is entitled to a 12-month placement. *Ex. J-32*. Thus, I find that Student is entitled to a 12-month placement.

For the foregoing reasons, I find that Parents have met their burden of proving the appropriateness of Student's placement at Private School for the 2023-2024 12-month school year including speech-language therapy along with 20 hours per week of home-based 1:1 ABA therapy.

In their complaint, Parent also requested a compensatory award. There are generally two approaches to fashioning a compensatory education award, the "quantitative" approach, and the "qualitative" approach. *M.C. ex rel. J.C. v. Cent. Reg'l Sch. Dist.*, 81 F.3d 389 (3d Cir. 1996); *See, e.g.*, *Reid*, 401 F.3d at 518, 524. The quantitative approach provides for compensatory education equal to the period of deprivation, whereas the qualitative approach fashions an award based upon individual assessments and is reasonably calculated to provide the educational benefits that "likely would have accrued from special education services the school district should have supplied in the first place." *Reid*, 401 F.3d at 518, 524. The Second Circuit has generally adopted the practice of leaving "the mechanics of structuring the compensatory education award" to the sound discretion of the court to fashion a relief that is appropriate in light of the purpose of the Act, without articulating a specific formula or approach. *Doe v. East Lyme*, 790 F.3d at 454, 457; *accord L.O. ex rel. K.T. v. New York City Dept. of Educ.*, 822 F.3d 95, 125 (2d Cir. 2016); *see also Student X. v. New York City Dept. of Educ.,* 2008 WL 4890440, at *26 (E.D.N.Y 2008). When calculating an award, a court can also consider "whether compensatory education should be limited to the kinds of services specified in the IESP or encompass analogous educational services appropriate to the student's current needs," but the ultimate award "must be reasonably calculated to provide the educational benefits that likely would have accrued from special education services the school district should have supplied in the first place." *Doe. v. East Lyme*, 790 F.3d at 457. Here, Student has been receiving services pursuant to an order of pendency issued on August 17, 2023. Thus, applying the quantitative approach, I find that Student is not entitled to any additional compensatory relief.

*Equities*

Even if a parent establishes a right to reimbursement under the IDEA, "courts retain discretion to reduce the amount of a reimbursement award if the equities so warrant." *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 246-47, 129 S. Ct. 2484, 174 L. Ed. 2d 168 (2009). In making that equitable determination, a hearing officer may consider many factors, including, *inter alia*, whether a parent's unilateral withdrawal of her child from the public school was justified, whether the parent provided the Department with adequate notice of the withdrawal, whether the amount of private-school tuition was reasonable, whether the parent should have availed herself of need-based scholarships or other financial aid from the private school, and whether there was any fraud or collusion in generating (or inflating) the tuition to be charged to the Department, or whether the arrangement with the school was fraudulent or collusive in any other respect. *E.M. v. New York City Dep't of Educ.*, 758 F.3d 442, 461 (2d Cir. 2014).

Here, Parents provided the necessary Ten-Day Notice of their concerns with the DOE's offer of FAPE for the Student for the 2021-2022 school year. *Ex. M*. Therein, Parents detailed specific concerns. *Id*. Parents furthermore gave the DOE notice of their intention to unilaterally place Student at the Private School. *Id*. No evidence was submitted at hearing describing the DOE's response to the Ten-Day Notice.

There also exists authority that a school district may not argue that the "equities" favor it once that school district concedes Prong 1. See N.R. v. Department of Education of the City of New York, 2009 U.S. Dist. LEXIS 27273, * 20-21 (S.D.N.Y. 2009): The Department's 'abdication of its responsibility to provide... FAPE is so clear from the record -- and the law's imposition of this duty on the [Department] is so well settled-- that... the equities favor the parents'.

The IDEA provides broad discretion to Hearing Officers and Courts to grant "such relief as ... is appropriate." 20 U.S.C. § 1415(i)(2)(C)(iii); see also *B.D. v. Dist. of Columbia*, 817 F.3d 792, 797-98 (D.C. Cir. 2016) (holding that both hearing officers and courts have far-reaching remedial power under the Act). "Supreme Court decisions interpreting this provision emphasize the plain meaning of this phrase, noting the breadth of discretion given to fashion appropriate relief in each case." *Maysonet v. N.Y.C. Dep't of Educ.*, 2023 U.S. Dist. LEXIS 44769, at *16-17 (S.D.N.Y. Mar. 16, 2023). According to the Second Circuit, IHOs have broad authority regarding relief, "restrained only by the Supreme Court's directive that 'the relief is to be appropriate' in light of the purpose of the Act." *L.O. v. New York City Dep't of Educ.*, 822 F.3d 95, 125 (2d Cir. 2016) (emphasis added) (citing *Sch. Comm. of Burlington v.*

*Dep't of Educ.*, 471 U.S. 359, 369 (1985). Additionally, "[a]lthough Part B does not address the specific remedies an impartial hearing officer may order upon a finding that a child has been denied FAPE, [the United States Department of Education's Office of Special Education Program's] position is that, **based upon the facts and circumstances of each individual case, an impartial hearing officer has the authority to grant any relief he/she deems necessary**…to ensure that a child receives the FAPE to which he/she is entitled." *Letter to Kohn*, 17 IDELR 522, OSEP 1991 (emphasis added).

The Supreme Court has emphasized that relief under the IDEA depends, in part, on "equitable considerations." See *Sch. Comm. of Town of Burlington, Mass. v. Dept. of Educ. of Mass.*, 471 U.S. 359, 374 (1985); *Carter*, 510 U.S. at 15-16. When a school district denies a child a FAPE, the courts have "broad discretion" to fashion an appropriate remedy." *Boose v District of Columbia*, 786 F. 3d 1054, 1056 (D.C. Cir. 2015), citing *Carter*, 510 U.S. at 15-16. In actions brought under the IDEA alleging a denial of FAPE, "the court shall grant such relief as the court determines is appropriate," limited only by the restriction that "the relief is to be appropriate in light of the purpose of the Act." *Doe v. East Lyme Bd. of Educ.*, 790 F.3d 454 (2d Cir. 2015

Direct tuition funding is relief encompassed by the equitable remedial powers inherent in IDEA. *See e.g., Mr. and Mrs. A. v. New York City Dep't of Educ.*, 769 F. Supp. 2d 403, 406 (S.D.N.Y. 2011) (parents may seek direct funding in the instance in which, "due to a lack of financial resources, [parents of a student with a disability] have not made tuition payments but are legally obligated to do so"). Direct and prospective funding are appropriate remedies in due process proceedings involving unilateral placements. *See Connors v. Mills*, 34 F. Supp.2d 795 at 805-806, 132 Ed. Law Rep. 767 (N.D.N.Y., 1998), *Mr. & Mrs. A. ex rel. D.A. v. New York City Dep't of Educ.*, 769 F. Supp. 2d 403 (S.D.N.Y. 2011). Here, the DOE raised no objection to an award of direct funding for any outstanding portion of the tuition. Further, the DOE would not be harmed by an award of direct funding, as the total amount the DOE would be ordered to pay would be equal under an order directing reimbursement or an order directing direct funding. On the other hand, an order directing only reimbursement has the potential to gravely harm Student, as in the event Parents were unable to pay, Student would not be able to attend a placement which was proven at hearing to be appropriate, and would be left without any placement at all (as the DOE's recommended program and placement has been found inappropriate).

By way of relief, Parents seek funding for the tuition costs at Private School. The DOE raised no issue with the reasonableness of the costs, including tuition, associated with the Private School. *See Record Generally.* Moreover, I find that the weight of the evidence establishes that Parent cooperated with the DOE and its CSE's efforts to develop an IEP and recommend a program and placement for the 2023-2024 school year. Finally, the DOE raised no challenge to Parent's request for a 12-month educational program for Student. *See Record Generally.* The testimony in the record supports a finding that Student benefits from, and is entitled to, a 12-month educational program. *See e.g., Ex. J.*

Thus, I find that the equities support Parent's request for funding of Tuition at Private School and school-based speech-language therapy along with 1:1 home-based ABA therapy for the 12-month 2023-2024 school year.

**ORDER**

NOW, THEREFORE, IN LIGHT OF THE ABOVE FINDINGS OF FACT, IT IS HEREBY **ORDERED THAT**:

I. The New York City Department of Education ("DOE") is hereby ordered to reimburse Parents for all out-of-pocket expenses incurred related to Student's attendance and tuition at Private School for the 2023-2024 12-month school year, and directly fund all remaining costs of Student's attendance and tuition at Private School for the 2023-2024 12-month school year, less any amount already paid pursuant to a pendency order or agreement, such payment to be made within thirty (30) days of the submission of documentation to the DOE's office of implementation; and

II. The DOE is hereby ordered to fund one 30-minute session per school day of speech-language therapy for the duration of the 2023-2024 12-month school year, only if such services are not provided to Student by Private School and included in the cost of tuition, less any amount already paid pursuant to a pendency order or agreement, at a reasonable market rate not to exceed that which the DOE has been ordered to pay for similar services within six (6) months of the date of this order, such payment to be made within thirty (30) days of the submission of documentation to the DOE's office of implementation; and

III. The DOE is hereby ordered to fund 20 hours per week of home-based 1:1 ABA therapy for the duration of the 2023-2024 12-month school year, to be provided by a qualified provider of Parent's choosing, at a reasonable market rate not to exceed that which the DOE has been ordered to pay for similar services within six (6) months of the date of this order, less any amount already paid pursuant to a pendency order or agreement, such

payment to be made within thirty (30) days of the submission of documentation to the DOE's office of implementation.

**SO ORDERED.**
DATED: 04/02/2024

                                                  //*s*// Edward Perkins
                                                  Edward Perkins, Esq.
                                                  Impartial Hearing Officer

## NOTICE OF RIGHT TO APPEAL

Within 40 days of the date of this decision, the parent and/or the Public-School District has a right to appeal the decision to a State Review Officer (SRO) of the New York State Education Department under section 4404 of the Education Law and the Individuals with Disabilities Education Act.

If either party plans to appeal the decision, a notice of intention to seek review shall be personally served upon the opposing party no later than 25 days after the date of the decision sought to be reviewed.

An appealing party's request for review shall be personally served upon the opposing party within 40 days from the date of the decision sought to be reviewed. An appealing party shall file the notice of intention to seek review, notice of request for review, request for review, and proof of service with the Office of State Review of the State Education Department within two days after service of the request for review is complete. The rules of procedure for appeals before an SRO are found in Part 279 of the Regulations of the Commissioner of Education. A copy of the rules in Part 279 and model forms are available at http://www.sro.nysed.gov.

**APPENDIX A – REDACTION IDENTIFICATION PAGE**

| Term Used In FOFD | Redacted Information |
|---|---|
| Student | Henry Terence Toth |
| Parents | Mira Toth |
| Parent Counsel | Jerry Toth |
| DOE Counsel | Michael Rutcostky |
| Private School | Gersh Academy |

APPENDIX B – DOCUMENTATION ENTERED INTO THE RECORD

PARENT EXHIBITS

| Exhibit | Document | Date | Pages |
|---|---|---|---|
| A. | Report and Recommendations | 03/04/2016 | 14 |
| B. | Mandate | 02/01/2018 | 05 |
| C. | Decision, Case #176630 | 04/20/2020 | 21 |
| D. | Decision | 07/29/2020 | 26 |
| E. | Decision, Case #211081 | 05/11/2022 | 25 |
| F. | Decision, Case #230169 | 11/01/2022 | 11 |
| G. | Neuropsychological Examination | 05/13/2019 | 09 |
| H. | Health Statement | 08/22/2019 | 01 |
| I. | Report | 06/05/2013 | 04 |
| J. | IEP 2023-2023 Academic Year | 03/13/2023 | 40 |
| K. | Minutes of CSE meeting | 03/13/2023 | 04 |
| L. | School placement | 06/21/2023 | 02 |
| M. | Rejection of school placement | 06/21/2023 | 02 |
| AA. | Affidavit | 01/08/2024 | 08 |
| BB. | Affidavit | 01/05/2024 | 07 |
| CC. | Affidavit | 01/04/2024 | 05 |
| EE. | | | |
| FF. | | | |
| GG. | Affidavit | 01/08/2024 | 02 |
| II. | Affidavit | 10/19/2022 | 02 |

DOE EXHIBITS

| Exhibit | Document | Date | Pages |
|---|---|---|---|

IHO EXHIBITS

| Exhibit | Document | Date | Pages |
|---|---|---|---|