OATH SEHD – CASE #295741

## LAW OFFICE OF J.G.TOTH

Telephone  (917)5769318                      43-32KissenaBlvd.15B
Email:  tothjerry1@gmail.com                 Flushing, N.Y.11355

June 30, 2025

Impartial Hearing Office                NYS Education Dept. Office of
131 Livingston Street, Room 201         Vocational and Educational Services
Brooklyn, New York 11201                for Individuals with Disabilities (VESID)
Fax (718) 935 2528                      One Commerce Plaza R, 1624, Albany, N.Y. 12234

### COMPLAINT
### For academic year 07/01/2025 – 06/30/2026

Student's name:                 Henry Terence Toth ("Terence")

NYCID:                          224465203 DOE

Student's address:              43-32 Kissena Blvd.15B, Flushing, N.Y. 11355

Student's date of birth:        October 2, 2007

Student attends:                Private school.

Name of school:                 Gersh Academy, 307 Eagle Rd. West Hempstead, N.Y.
                                Tel.: 630 385 3342 x 40 (Att. Yvonne Waskiewicz).

Contact Information for Parent:  Mira Toth,  43-32 KissenaBlvd.15B
                                Flushing, N.Y. 11355 requests email notification of
                                scheduled hearings. mira.toth@gmail.com
                                (917) 502 5308 (cell)

Primary home language:          English.

Date of current IEP:            For the 2025-2026 academic year the DOE issued no
                                IEP, conducted no evaluation.  On 6/26/2025 the
                                DOE issued a school location letter assigning the
                                student to a District 75 school, PS Q177.  A school
                                representative by telephone advised parents could not
                                visit. 6/26/2025 was the last day of school.

1

| Diagnosis: | In June 2010, Early Intervention Program psychologist Dr. Jack Ma diagnosed the student as autistic. Dr. Ma prescribed 1:1 ABA therapy. |
|---|---|
| | All experts who evaluated the student found the student can learn only with 1:1 instruction. The student suffers severe delays in speech, social behavior. |

## INTRODUCTION

1. As interim relief, parents request a pendency order based on the student's actual operative placement set forth in the 4/2/2024 Decision in IHO case # 248309.

2. "The language of § 1415(e)(3) is unequivocal. It states plainly that during the pendency of any proceedings initiated under the Act, unless the state or local educational agency and the parents or guardian of a disabled child otherwise agree, "the child *shall* remain in the then current educational placement." § 1415(e)(3)." Honig v. Doe, 484 U.S. 305, 323 (1988).

3. "The purpose of the pendency provision is to provide stability and consistency in the education of a student with a disability." Gabel ex rel. L.G. v, Bd. of Educ" of Hyde Park Cenr. Sch. Dist., 368 F. Supp. 2d 313,324 (S.D.N.Y.2005); 20 U.S.C. § 1.

4. "To determine a child's 'then-current educational placement,' a court typically looks to: (1) 'the placement described in the child's most recently implemented IEP'; (2) 'the operative placement actually functioning at the time when the stay put provision of the IDEA was invoked'; or (3) 'the placement at the time of the previously implemented IEP.'" E. Lyme Bd. of Educ.,790 F.3d 440 (2d. Cir 2015) F.3d at 452 (quoting Mackey ex rel. Thomas M. v. Bd. ofEduc. for Arlington Cent. Sch. Dist., 386 F.3d 158, 163.

5. For the 2025-2026 academic year, parents object to the DOE's omission to issue an IEP. The parents disagree with the DOE's 6/26/2025 evaluation that a District 75 school can meet the individual needs of this particular student. The parents disagree with the DOE's failure to evaluate the student, despite ample opportunity to evaluate. As interim relief, before any hearing concerning the 2025-2026 academic year, parents request IEEs consisting of evaluation by a developmental pediatrician and a psychologist, costing $5500 each, a total of $11,000 for the two. The curriculum vitaes of the proposed evaluators are annexed immediately preceding parents' request for relief.

OATH SEHD CASE #295741

6.  As final relief parents request an order of prospective payment of tuition at Gersh Academy, and 20 hours per week of home-based 1:1 ABA therapy.

7.  To address the student's severe speech delay, parents request 100 hours of compensatory instruction comprising 50 hours of compensatory speech therapy and 50 hours of 1:1 ABA therapy focussing on speech.

## RELEVANT FACTS

8.  From 2012 to 2015, the student attended a District 75 school. PS Q393. The classroom teacher did not know how to teach the student.  The student's behavior immediately regressed, grew worse each month.  Classroom teacher Kathy Maffatore and school director Marcie Kahl advised parents to seeek a specialized school appropriate  for the student's individual disability.  In 2015, the DOE stipulated to the student attending AMAC, a Manhattan school for students with disabilities and receiving home-based ABA therapy.

9.  Every evaluator found the student cannot learn and progress without 1:1 instruction.

10. For the 2025-2026 academic year, the DOE did not issue an IEP.  Given every  opportunity to evaluate the student, the DOE did not evaluate the student.

11. On 6/26/2025 the  DOE sent parents a School Location Letter.  The DOE issued the school location on the last day of school when parents could not possibly visit the school.  The DOE omitted to disclose whether the student would receive a 12-month academic program as the student had received previously.  The DOE did not identify the school's methodology.  The DOE did not respond to any question about the services the school offered.

12. By this Complaint, the parents request, based on expert evaluations and input from educators who have taught the student, an appropriate school placement and an IEP which will permit the student to learn and progress.

13. To address the student's deficit in speech, parents request 100 hours of compensatory speech therapy.

OATH SEHD - CASE #295741

## PROCEDURAL BACKGROUND

**For 13 years the parties litigated repetitively whether
the student needs a private school and 1:1 instrution.**

14. From 2012 to 2025, the DOE either issued no IEP or issued IEP's providing insufficient 1:1 instruction.

15. Magistrate James Orenstein of the Eastern District of New York reported that the issuance by the DOE of an IEP omitting 1:1 ABA therapy  would show that the parents have a cause of action:

> "Of course, if the DOE were to issue such a regressive IEP, Toth would have the right to initiate a new lawsuit. The DOE would be hard pressed to dismiss any such new action as moot, even if the case could not be concluded within a single school year, because at that point it would no longer be mere speculation that the prior IEP would be repeated. Moreover, Toth might also be able to reopen this action on the basis of new evidence showing that the dismissal on mootness ground had been erroneous. See Fed. R. Civ. P. 60(b).

*Magistrate James Orenstein, Report and Recommendations, footnote 4, Toth v. New York City Department of Education,* Case #14-cv-03776-SLT JO Document 48 Filed 03/14/16.

16. The Second Circuit Court of Appeals expressly approved Magistrate Orenstein's Report and Recommendations.   The Second Circuit opined,  "The fact that the DOE has now issued a new IEP that eliminates ABA therapy establishes that Toth's concern is no longer speculative." Jerry Geza Toth on behalf of T.T. v. City of New York Department of Education, No. 17-383-cv (2nd Cir. 2018).

**Date of Decision or Stipulation:**

4/20/2020    Case #173630:   For academic years 2017-2018, 2018-2019, 2019-2020, IHO Brad Rosken found a "gross violation".  Decision 4/20/2020. The IHO granted parents' request for tuition to attend Gersh Academy.  On appeal the SRO affirmed placement at Gersh Academy.  The SRO added to Gersh Academy 20 hours per week of home based 1:1 ABA therapy.

5/24/2021    Case #19-CV-3821 (EDNY).  AMAC, a Manhattan school for students with disabilities, filed in bankruptcy, closed.  The parents by OSC in case # 19-cv-3403 requested the Keswell School, an "unapproved private school" providing 1:1 ABA therapy. The DOE opposed.  T.T. missed school from 6/26/2019 to 9/19/2019.

4

OATH SEHD – CASE #295741

6/20/2025    Case # 206350:  For 761 hours of instruction the student missed from March 1 to June 30, 2020, parents requested compensatory education.  Two certified teachers testified as witnesses.  In her Decision dated 10/4/2021, IHO Ann Marquez did not list the two teachers as witnesses. Marquez actively concealed the true facts. Following five years of litigation filings in the Second Circuit, the parties in case # 21-cv-04245 settled by stipulation.

6/17/2022    Case # 211081:  For the 2021-2022 academic year, the DOE issued no IEP. IHO Jean Marie Brescia, Esq. granted parents' request for, tuition at Gersh Academy, 20 hours per week of 1:1 home based ABA therapy, compensatory education, compensatory speech therapy.

> "Henry's constellation of challenges is such that his special educational needs cannot be met within the confines of a standard school day. As a result, as the witnesses credibly and consistently testified, Henry requires services provided outside of the standard school day in order to make meaningful progress.

> "…With respect to the request for 20 hours per week of after-school 1:1 ABA instruction, the uncontroverted testimony of Dr. Daren and Ms. Musgrave establishes that Henry needs such instruction to make educational progress and that, in fact, he is making progress with such services"

Decision, Case #211081, 06/17/2022.

11/1/2022    Case # 230169:"Since the DOE did not present a case, present any witness testimony, or place any documents in evidence at the hearing, the DOE failed to address or sustain its burden under the Education Law and failed to demonstrate it provided the Student with a FAPE for the 2022-2023 school year."  Decision 11/1/2022.

4/2/2024    Case # 248309.   Opposing the views of seven members of the CSE. District Representative Navrila Riaz omitted from the IEP the school the student attends and the 1:1 instruction he receives.  By IEP dates 03/30/2023, CSE3 represented by Ms. Riaz, placed the student in a

> "The New York City Department of Education ("DOE") is hereby ordered to reimburse Parents for all out-of-pocket expenses incurred related to Student's

5

attendance and tuition at Private School for the 2023-2024 12-month school year, and directly fund all remaining costs of Student's attendance and tuition at Private School for the 2023-2024 12-month school year, less any amount already paid pursuant to a pendency order or agreement, such payment to be made within thirty (30) days of the submission of documentation to the DOE's office of implementation; and

"II. The DOE is hereby ordered to fund one 30-minute session per school day of speech-language therapy for the duration of the 2023-2024 12-month school year, only if such services are not provided to Student by Private School and included in the cost of tuition, less any amount already paid pursuant to a pendency order or agreement, at a reasonable market rate not to exceed that which the DOE has been ordered to pay for similar services within six (6) months of the date of this order, such payment to be made within thirty (30) days of the submission of documentation to the DOE's office of implementation; and

"III. The DOE is hereby ordered to fund 20 hours per week of home-based 1:1 ABA therapy for the duration of the 2023-2024 12-month school year, to be provided by a qualified provider of Parent's choosing, at a reasonable market rate not to exceed that which the DOE has been ordered to pay for similar services within six (6) months of the date of this order, less any amount already paid pursuant to a pendency order or agreement, such

4/2/2025    Case #284080.   For the 2024-2025 academic year, the DOE issued no IEP, performed no evaluation.  On 12/18/2024, IHO Carina Patritti denied parents' motion for IEE's as preliminary relief.  In the IHO's 4/3/2025 Decision, in footnote 4, she wrote that the parents withdrew a request parents never made, for IEE's as final relief.

6/12/2025    Case #293514:   In case #248080, the IHO based her denial of IEE's on a mistaken representation by the DOE's counsel.  Presented new and different facts, IHO Patritti denied IEE's.

OATH SEHD CASE #295741

## THE PROBLEM

### Diagnoses

17. Doctors diagnose the student with autism spectrum disorder, Level 3, with Accompanying intellectual and language impairment. Level 3 means he requires very substantial support. Secondly doctors diagnose T.T. with attention-deficit /hyperactivity disorder, the combined type.

18. In speech the student suffers critical delays.

### A District 75 school was unable to teach the student.

19. From 2012 to 2015 the student studied in a District 75 school. The classroom teacher testified she did not know how to teach the student. She had no training in the instruction of autistic students. The principal advised the parents to find a more suitable school.

17. On 03/14/2023 parents wrote to the District representatives the futility of placement of the student in a District 75 school:

> "Terence attended a District 75 public school. The classroom teacher lacked specialized training in autism. She was unable to teach him. His behavior spiraled out of control. The District 75 school telephoned parents to come pick up the student. They were unable to manage him. The principal and classroom teacher advised parents that the student needs a school more specialized than District 75.
>
> It would make no sense to return him to District 75. He tried that. Everyone agreed District 75 was inappropriate.

20. On 6/26/2025 the DOE issued a school location letter assigning the student to public school Q-177. The letter did not state if the student would receive 12-month services. The letter is not state the size of the class. The letter did not describe class composition, whether a class for students with mutiple disabilities or a class for students with the same or similar disabilities. The letter did not identify the school's teaching methodology. The letter did not state if the school offers BCBA's (Board Certified Behavior Analysts) to guide and train teachers and to evaluate students.

21. In the present case, the DOE gave parents no opportunity to visit the school or to comment upon the school before the DOE assigned the student to the school, necessitating expensive litigation.

7

OATH SEHD - CASE #295741

**In a classroom setting, no learning occurs.**

22. To make T.T. focus on learning requires 100% of a teacher's skills, focus and concentration. In six or eight-child classrooms, Terence cannot learn and progress.  By contrast, with 1:1 instruction he learns and progresses well. He does not require special education learning materials.  He canstudy a regular education curriculum.

23. Julie Russell, Education Director of Brooklyn Autism Center evaluated T.T. as follows:

> "...in a classroom of five other students he's probably going to be very distractible. I think it's going to be very hard for him to follow classroom routines, any direction given by a teacher to the whole classroom. I think it's going to be hard for him to attend. I think any maladaptive behaviors that might appear it could be hard to manage those behaviors with five other students present in the room."

1:14-cv-03776-SLT-JO <u>Toth v. New York City Department of Education</u>, Doc 1 at ¶24 filed 06/11/2014.

**Dr. Karen M. Hopkins, M.D. found T.T.'s autism prevented T.T.'s focusing.**

21. Developmental pediatrician Dr. Karen M. Hopkins, M.D. made the following observations:

> "He made almost no eye contact with the examiner;  a little more with his mother. He was extremely active and did not stay still for longer than two minutes. He indicated that he needed to go to the bathroom several times, in order to be able to leave the room. Terence spoke in a low voice–he was difficult to understand, luring his words at times. His speech was also stilted and a bit robotic at times.  He would repeat full sentences when his mother asked him to, for example, "May I have the phone please," but was unable to come up with full sentences of several words on his own.  He generally did not respond to direct questions, and could not carry on a conversation. Terence was able to read out loud, a portion of a simple, Level 1 book.  However, he was unable to discuss what happened in the book. It was very difficult for him to maintain his focus on tasks–he required constant redirection, and was highly distractible and impulsive."

22. Neuropsychologist Dr. Andrew Daren prescribed two hours per day of daily speech therapy.

**The District failed to follow mandated procedures.**

23. The District did not issue an IEP.  The District did not evaluate the student. The District excluded parents from school selection, design of an appropriate IEP.

**The IEP is substantively inadequate.**

**a.  The student cannot learn without 1:1 instruction.**

24.      The student cannot learn in a classroom setting.  He can learn only with 1:1 instruction.  The 2022-2023 IEP fails to explain how Terence could learn without the 1:1 instruction he needs.

25.   Despite overwhelming evidence that the student required a 1:1 instruction ratio, the Department placed the student in 6:1+1 classroom.  The challenged IEP denies a FAPE.  *See CF ex Rel. RF v. New York City Dept. of Educ.,* 746 F. 3d 68 (2nd Cir. 2014).

26.      The "IDEA's primary purpose is to ensure [a] FAPE..." *Nieves-Marquez v.* Puerto Rico, 353 F.3d 108, 125 (1st Cir.2003). "[T]he right to a free appropriate public education [FAPE] is afforded to each disabled child as an individual". *D.D. v. N.Y.C. Bd. of Educ.,* 465 F.3d 503, 511 (2d Cir.2006).

27. "The adequacy of a given IEP turns on the unique circumstances of the child for whom it was created." Endrew F. v. Douglas Co. School Dist. Re-1, 137S.Ct. 988, 992. (2017).

28. By omitting 1:1 instruction, the IEP fails to provide education instruction specially designed to meet a student's unique needs (20 U.S.C. § 1401[29]; 34 C.F.R. §300.39[a][1]; Educ. Law § 4401[1]; 8 NYCRR 200.1[ww]; *Board of Educ. v. Rowley,* 458 U.S. 176, 188-89 (1982).

29. The 08/01/2022 IEP violates the IDEA's mandate that disabled children receive "related services designed to meet their unique needs." *Bd. of Educ. ofPawling Cent. Sch. Dist. v. Schutz*, 290 F.3d 476, 481 (2d Cir. 2002).

> "The 'free appropriate public education' mandated by federal law must include 'special education and related services' tailored to meet the unique needs of a particular child, . . . and be 'reasonably calculated to enable the child to receive educational benefits.'"

*Walczak v. Florida Union Free Sch. Dist.,* 142 F.3d 119, 122 (2d Cir. 1998).  The IEP to be implemented on 03/27/2023  failed to address the unique circumstances of the student in this case.

OATH SEHD   CASE #295741

**b. To address a severe speech delay, parents request compensatory education.**

30. "It may be a rare case when compensatory education is not appropriate." *Parents of Student W v. Puyallup School Dist. 3*, 31 F. 3d 1489, 1497 (9th Cir. 1994).

31. Compensatory education is a remedy designed to "make up for" a denial of a FAPE. *E.M. v. New York City Dep't of Educ.*, 758 F.3d 442, 451 [2d Cir. 2014]. Compensatory education is an equitable remedy, part of the court's resources in crafting "appropriate relief." 20 U.S.C. § 1415(e)(2). Compensatory education is a remedy "'calculated to provide the educational benefits that likely would have accrued from special education services the school district should have supplied in the first place.'" *Doe v. East Lyme Bd. of Educ.*, 790 F.3d 440, 457 (2d Cir. 2015) (quoting *Reid ex rel. Reid v. D.C.*, 401 F.3d 516, 524 (D.C. Cir. 2005).

32. In the present case, the student received less speech therapy than he needed. Based on the student's severe delays in speech and his urgent need to learn to speak, parents request 100 hours of compensatory education comprising 50 hours of conpensatory speech therapy and 50 hours of compensatory 1:1 ABA instruction. *See* Appeal No. 08-060 [upholding additional services awards of speech language therapy]; *P. ex rel. Mr. and Mrs. P. v. Newington Bd. of Educ.*, 546 F.3d 111, 123 (2d Cir. 2008).

### Equitable circumstances favor the parents.

33. Despite abundant opportunity to evaluate the student the District did not evaluate. IHO's oppose IEE's. Without reference to the student's individual needs the District assigned a school. The IEP is not "individualized." The IEP omits to consider the student's the student's inability to learn without 1:1 instruction. The IEP fails to address the student's individual needs at age 17, to speak.

34. The IEP overlooks the student's need for stability. Without stating any reasons, the District proposed to uproot the student.

### Res Judicata Does Not Bar the Parents' IEE Request.

35. Parents object to the DOE's 6/26/2025 evaluation that a District 75 placement is appropriate, "All a parent must do is "disagree[] with an evaluation obtained by the public agency." 34 C.F.R. § 300.502(b)(1). Once the parent has disagreed, the burden automatically shifts to the school either to "[f]ile a due process complaint to request a hearing to show that its evaluation is appropriate," or "[e]nsure that an [IEE] is provided at public expense." *Id.* § 300.502(b)(2)(i)-(ii). " *D.S. v. Trumbull Bd. of Educ.*, 975 F.3d 152, 168 (2d. Cir. 2020).

### Curricula vitae of parents' proposed evaluators annexed here.

OATH SEHD - CASE #295741

# FRANCYNE ZELTSER, PSY.D.

(516) 902-3736

Francyne.Zeltser@ManhattanPsychologyGroup.com

---

**EDUCATION**

| | |
|---|---|
| **St. John's University** | May 2012 |

Doctor of Psychology, School Psychology

     Concentration: Psychological Interventions

**St. John's University**    May 2010

Master of Science, School Psychology

**Binghamton University, State University of New York**    May 2007

Bachelor of Arts, Psychology

**CERTIFICATION AND LICENSURE**

New York State Licensed Psychologist # 020690

New York Certification in School Psychology

National Certification in School Psychology

**PROFESSIONAL WORK EXPERIENCE**

**Manhattan Psychology Group, New York, NY**    2022 – Present

*Clinical Director of Mental Health & Testing Services and  Child, Adolescent & Adult Psychologist*

**CNBC Make It**    2021 – Present

*Contributor*

https://www.cnbc.com/francyne-zeltser/

**St. John's University Center for Psychological Services, Queens, NY**    2014 – 2022

*Adjunct Professor,* Psychological Assessment Practicum & Intervention Practicum

**Child and Family Psychology, Franklin Square, NY**    2013 – 2022

*Psychologist & Clinical Supervisor*

**Valley Stream School District 30, Valley Stream, NY**    2012 – 2022

*School Psychologist, CSE/CPSE Chairperson & Out of District Coordinator*

**Prep for Prep, New York, NY**    2010 – 2017

*IQ Tester*

**Oceanside School District, Oceanside, NY**    2011 – 2013

*Intensive Behavioral Intervention Coordinator & Parent Counseling and Training Provider*

**Oceanside School District, Oceanside, NY**    2011 – 2012

*School Psychologist,* Boardman Elementary School #9E

11

OATH SEHD CASE #295741

**LEADERSHIP EXPERIENCE**

**Social Emotional Learning (SEL) Committee,** Valley Stream District 30 — 2016 – 2022

**RTI/AIS Committee,** Valley Stream District 30 — 2014 – 2022

**Special Services Advisory Committee,** Valley Stream District 30 — 2014 – 2020

**HONORS AND AWARDS**

**NYASP Chapter O (Nassau County) School Practitioner of the Year Award** — 2018

**Psi Chi the International Honor Society in Psychology**, St. John's University — 2010

**SPECIALIZED TRAINING SEMINARS AND WORKSHOPS**

Crisis Prevention Institute (CPI): Nonviolent Crisis Intervention Training

NASP School Crisis Prevention and Intervention: The PREPaRE Model Workshops

The Winter Roundtable Conference at Teachers College, Columbia University

The Long Island Consortium for Excellence and Equality: Diverse Learners and School Culture

Dignity for All Students (DASA) Training in Harassment, Bullying, Cyberbullying and Discrimination in Schools: Prevention and Intervention

Seminar in School Violence: Prevention and Intervention Strategies

Seminar in Child Abuse and Maltreatment Identification, Reporting, and Interventions

Functional Assessment and Behavior Intervention Training

Dialectical Behavior Therapy Training, Center for Cognitive and Dialectical Behavior Therapy

DBT in Schools: Skills Training for Emotional Problem Solving for Adolescents (STEPS-A)

**PROFESSIONAL AFFILIATIONS**

New York Association of School Psychologists (NYASP)

National Education Association (NEA)

National Association of School Psychologists (NASP)

American Psychological Association (APA), Division 16

**COMMUNITY SERVICE**

OMH COVID-19 Emotional Support Helpline, Volunteer Psychologist

National Association of School Psychologists, Convention Proposal Reviewer

OATH SEHD - CASE #295741

## Curriculum Vitae

**Karen M. Hopkins, MD**
**Clinical Associate Professor of Pediatrics**
**New York University School of Medicine**
**Department of Pediatrics**
**Developmental - Behavioral Pediatrics**
**530 First Avenue – Suite 3A**
**New York, New York 10016**
**Phone:  (212) 562-4313; (212) 263-7455**
**Fax:  (212) 263-7112; (212) 562-5518**
**kmh1@nyu.edu**

### Education

| Year | Degree | Field | Institution |
|---|---|---|---|
| 1977 | BS | Biology | Tufts University |
| 1981 | MD | Medicine | New York University School of Medicine |

### Postdoctoral Training:

#### Internships and Residencies

| | | |
|---|---|---|
| 1981-1982 | Internship in Pediatrics | St. Vincent's Hospital and Medical Center |
| 1982-1984 | Residency in Pediatrics | St. Vincent's Hospital and Medical Center |
| 1983-1984 | Chief Resident in Pediatrics | St. Vincent's Hospital and Medical Center |

#### Clinical and Research Fellowships

1986-1988    Fellowship in Developmental / Behavioral Pediatrics
Albert Einstein College of Medicine, Rose F. Kennedy Center for Research in Mental Retardation and Human Development

### Licensure and Certification

1982    New York State Medical License #152397
1987    American Board of Pediatrics, Certification in General Pediatrics
2002    American Board of Pediatrics, Subspecialty Certification in Neurodevelopmental Disabilities

### Languages Spoken
Spanish

OATH SEHD - CASE #295741

## Academic Appointments

| | | |
|---|---|---|
| 1988-1994 | Assistant Professor of Pediatrics | Albert Einstein College of Medicine |
| 1994- | Clinical Associate Professor of Pediatrics | NYU School of Medicine |

## Hospital Appointments

| | | |
|---|---|---|
| 1984-1986 | Attending | St. Vincent's Hospital and Medical Center |
| 1988-1994 | Assistant Attending | Bronx Municipal Hospital Center |
| 1988-1994 | Assistant Attending | Montefiore Hospital Medical Center |
| 1988-1994 | Assistant Attending | North Central Bronx Hospital |
| 1988-1994 | Assistant Attending | Weiler Hospital |
| 1994- | Associate Attending | Tisch Hospital |
| 1994- | Associate Attending | Bellevue Hospital Center |

## Principal Clinical, Administrative and Hospital Service Responsibilities:

1984-1986
General Practice in Pediatrics and Adolescent Medicine
*N.E.N.A.Comprehensive Health Services Center*; New York, NY

1985-1989
Attending Physician, Adolescent Health Center
*The DOOR/A Center for Alternatives*; New York, NY

1987-1989
Attending Developmental Pediatrician and Consultant, Center for Child Development
*Morrisania NFCC/Montefiore Hospital Affiliate*; Bronx, New York

1988-1994
Attending Developmental Pediatrician and Director of the Developmental and Family Services Unit, Children's Evaluation and Rehabilitation Center
*Albert Einstein College of Medicine*; Bronx, New York

1992-1993
Developmental Pediatric Consultant, Department of Pediatrics
*St. Vincent's Hospital and Medical Center*; New York, NY

1990-1994
Medical Director, Bureau for Families with Special Needs, (Physically Handicapped Children's Program, Homeless Health Initiative, Pediatric AIDS Unit, Specialty Clinic Services)
*New York City Department of Health*; New York, NY

1994-2001
Attending Pediatrician, Premature and High-Risk Infant Clinic, Division of Ambulatory Pediatrics, and Consultant, Neonatal Continuing Comprehensive Care Program, (Developmental follow-up program)
*New York University Medical Center*; New York, NY

OATH SEHD - CASE #295741

3 of 7

| | |
|---|---|
| 1994-2009 | Director, Early Intervention Program, Division of Ambulatory Pediatrics *Bellevue Hospital Center*; New York, NY |
| 1994 - | Associate Director, Pediatric Developmental-Behavioral Fellowship Program, Department of Pediatrics *New York University School of Medicine*; New York, NY |
| 1994 - | Director, Pediatric Developmental Clinic Director, ADHD Clinic Division of Ambulatory Pediatrics *Bellevue Hospital Center*; New York, NY |
| 1994 - | Faculty Practice in Developmental-Behavioral Pediatrics *New York University Medical Center*; New York, NY |

**Mentoring of Graduate Students, Post-Doctoral Fellows in Research:**

| Name | Position | Time period |
|---|---|---|
| Caroline Martinez, MD | Fellow in Developmental-Behavioral Pediatrics *Projects:* American Academy of Pediatrics CATCH Grant (2010) | 2009-2012 |

**Broadcast and Media Experience:**

**Training**

| | |
|---|---|
| 2001 | "Interviewing, Anchoring and Reporting", New York University School of Continuing and Professional Studies, New York, NY |
| 2004 | AMA-sponsored "Medical Communications and Health Reporting Conference," Las Vegas, NV |

**Radio**

| | |
|---|---|
| 2000–2001 | Host, *Today's Child Radio Talk Show*, WWRL Radio Station, New York, NY |
| 2008 - | Host and frequent guest, *Doctor Radio Show, Powered by NYU Langone Medical Center* Sirius Satellite Radio, New York, NY |

**Television**

| | |
|---|---|
| 2001 | Fox 5 TV News – "Raising Biracial Children" |
| 2005 | CBS Evening News – "Possible Side-Effects of a Tylenol Overdose" CBS Early Show – "Kiddie Weight-Lifting" CBS Early Show – "Caffeinated Sports Drinks for Kids" New York One News – "Dr. Ferber Changes his Stance on Putting Infants to Sleep" |

15

| | |
|---|---|
| 2006 | CBS Early Show – "Parents Face Day Care Dilemma" |
| 2007 | CW-11 News CloseUp – "Autism – Is it An Epidemic?" |
| 2010 | NBC Today Show "Your Baby Can Read Claims Overblown" |

**Editorial Positions**

| | |
|---|---|
| 1998-2002 | Editorial Director, *Today's Child* Magazine; New York, NY |

**Major Professional and Policy/Advisory Committee Assignments**

| | |
|---|---|
| 1988 | Task Force on AIDS - The Inter-Agency Council of Mental Retardation and Developmental Disabilities Agencies, New York |
| 1988-1990 | Bronx Borough Work-Group of the New York City Regional Planning Group to Implement PL 99-457, (Early Intervention Program Legislation) |
| 1989-1994 | Medical Sub-Committee, Bronx Pediatric AIDS Consortium, HRSA Demonstration Project |
| 1992-1995 | Committee for the Care of Children and Adolescents with HIV Infection, The AIDS Institute, New York State Department of Health |
| 1991-1996 | Advisory Committee of the Infant-Toddler Teen Parent Staff Development Institute, LYFE Program, New York City Board of Education |
| 1993-1999 | Medical-Clinical Advisory Board of the Association for the Help of Retarded Citizens |
| 1995-1996 | Advisory Board, Early Intervention Training Consortium, New York State Department of Health |
| 1996- 1999 | Consultant/Trainer, New York State Department of Health and Empire State College -- Training Program in Early Intervention for Physicians and Health Care Professionals |
| 1997- 1999 | Board of Directors, Mothers' Voices, Inc. |
| 1997- 1999 | Member, Clinical Practice Guidelines Consensus Panel for Communication Disorders, Early Intervention Program, New York State Department of Health |
| 1998-2000 | Advisory Committee, New York University |

16

OATH SEHD - CASE #295741

5 of 7

|  |  |
|---|---|
|  | Quality Improvement Center for Disabilities<br>Head Start and Early Head Start Programs, U.S. Federal Region II |
| 1997-2001 | Regional Contact, Medical Home Program for Children with Special Needs, American Academy of Pediatrics |
| 1992-2002 | Advisory Committee of the Infant Health Assessment Program, (IHAP), Medical and Health Research Association and the NYC Department of Health |
| 1993-2002 | Local Early Intervention Coordinating Committee of the NYC Early Intervention Program, NYC Department of Health and Mental Hygiene |
| 1998-2003 | Editorial Advisory Board, *Today's Child* Magazine |
| 2007-2009 | Pharmacy and Therapeutics Committee, Bellevue Hospital Center |
| 1995-2009 | Board of Directors, Leake and Watts Services, Inc. |
| 2008-2011 | Chair, Early Intervention Coordinating Council, NY State Department of Health |
| 2008-2011 | Board for Professional Medical Conduct, NY State Department of Health |
| 2010- | Board of Directors, Children of Bellevue |
| 2010- | Board of Directors, Amsterdam Nursing Home |

**Memberships, Offices and Committee in Assignments in Professional Societies**

| | |
|---|---|
| 1987- | American Academy of Pediatrics, Fellow |
| 1989- | National Medical Association, Member |
| 1992-1994 | Public Health Association of New York City, Member |
| 1992-1996 | Committee on Children with Disabilities, American Academy of Pediatrics Chapter 3, District II |
| 1993-1994 | Provisional Committee on Pediatric AIDS, American Academy of Pediatrics |
| 1993-2000 | Susan Smith McKinney Steward, MD Medical Society, Member |
| 1993- | New York Academy of Medicine, Fellow |
| 1996-2000 | American Public Health Association, Member |
| 1997- | Society for Developmental and Behavioral Pediatrics, Member |

17

OATH SEHD - CASE #295741

**PUBLICATIONS**

1.  **Hopkins KM**.: "Emerging Patterns of Services and Case Finding for Children with HIV Infection," Mental Retardation 1989; 27:219-22.

2.  **Hopkins KM**, Grosz J, Cohen H, Diamond G, Nozyce M.: "The Developmental and Family Services Unit-A Model AIDS Project Serving Developmentally Disabled Children and Their Families," AIDS Care 1989; 1:281-5.

3.  Grosz J, **Hopkins KM**.: "Family Circumstances Affecting Care-givers and Brothers and Sisters", In: Crocker A, Cohen H, Kastner T.,eds. HIV Infection and Developmental Disabilities - A Resource for Service Providers, Baltimore: PH Brookes, 1991:43-52.

4.  Kastner T, Nathanson R, Rudigier A, Harvey D, Grosz J, **Hopkins KM**, Murphy A.: "Human Immunodeficiency Virus and Developmental Disabilities-A Leader's Guide for a Workshop", Silver Spring, Maryland: American Association of University Affiliated Programs, 1990.

5.  **Hopkins KM**, Grosz J, Lieberman A.: "Working with Families and Caregivers of Children with HIV Infection and Developmental Disability", Silver Spring, Maryland: American Association of University Affiliated Programs, 1990:1-4, (Technical Report Number 6).

6.  Hittelman J, **Hopkins KM**, Shah V.: "Neurodevelopmental and Neuropsychological Disabilities", In: Criteria for the Medical Care of Children and Adolescents with HIV Infection, New York, New York: The New York State Department of Health AIDS Institute, 1995.

7.  **Hopkins KM**, (panel member): Clinical Practice Guideline: Report of the Recommendations - Communication Disorders - Assessment and Intervention For Young Children (Age 0-3 Years), Albany, New York: New York State Department of Health, 1999, (Publication No. 4218).

8.  **Hopkins KM**, (panel member): Clinical Practice Guideline: The Guideline Technical Report - Communication Disorders - Assessment and Intervention for Young Children   (Age 0-3 Years), Albany, New York: New York State Department of Health, 1999,   (Publication No. 4220).

9.  Dreyer BD, **Hopkins KM**. Developmental and Behavioral Pediatrics. In: Lembo RM, editor. Educational Review Manual in Pediatrics. 3rd ed. New York: Castle Connolly Graduate Medical Publishing; 2002.

9.  Dreyer BD, **Hopkins KM**, Mendelsohn AL. Developmental and Behavioral Pediatrics. In Lembo RM, editor. Educational Review Manual in Pediatrics .5th ed. New York: Castle Connolly Graduate Medical Publishing; 2007.

10. Forrest EK, Dreyer BP, Valdez PT, Baigorri M, Berkule SB, **Hopkins KM**, Smoller AB, Mendelsohn AM. "Developmental Assessment of Hispanic/Latino Kindergarten Children as they Transition to English-Speaking School Settings", Journal of Developmental and

Case 1:25-cv-03317-NRM-TAM    Document 10-3    Filed 07/17/25    Page 19 of 21 PageID #: 63

Behavioral Pediatrics, in review.

## ABSTRACTS:

1.  **Hopkins KM**, Demb HB.  Reported Behavior Problems in Urban Learning Disabled Children Receiving Psychoeducational Treatment.  Abstracts of the 26th Annual International Conference of the Association for Adults and Children with Learning Disabilities.  Miami Beach, FL.; 1989.

2.  Grosz J, Schlussel S, **Hopkins KM**.  Mini-Team:  An Early Intervention Approach for HIV-Infected Children and Their Caretakers.  Abstracts of the 5th Annual National Pediatric AIDS Conference.  Los Angeles, CA; 1989.

3.  Lieberman A, Grosz J, **Hopkins KM**.  Characteristics of Foster Families Caring for HIV Positive Children.  Abstracts of the 5th Annual National Pediatric AIDS Conference.  Los Angeles, CA; 1989.

4.  **Hopkins KM**. Networks and Partnerships:  Facilitating Access to Education for HIV-Infected Children.  Abstracts of the 6th Annual National Pediatric AIDS Conference.  Washington, DC; 1991.

5.  Tomopoulos S, Dreyer BP, Berkule SB, Fierman AH, **Hopkins KM**, Huberman HS, Mendelsohn AL. Infant Media Exposure: Adverse Effects on Toddler Development. Abstracts of the Pediatric Academic Societies Annual Meeting.  Baltimore, MD; 2009.

6.  Smoller AB, Mendelsohn AL, **Hopkins KM**, Huang R, Hate R, Dreyer BP, Berkule SB, Martorella, T, Kang E, Tomopoulos S. Media Exposure in Children With and Without Attention Deficit Hyperactivity Disorder (ADHD).  Abstracts of the Pediatric Academic Societies Annual Meeting.  Baltimore, MD; 2009.

7.  Huang R, Tomopoulos S, Dreyer BP, Brockmeyer CA, Berkule-Silberman SB, **Hopkins KM**, Martinez CL, Bases H, Urraca T, Romero D, Mendelsohn, AL. Cumulative Infant/Toddler Media Exposure Adversely Associated with Self-Regulation at 3 Years. Abstracts of the Society for Developmental and Behavioral Pediatrics Annual Meeting. Boston, MA, 2010.

8.  Martinez CL, Brockmeyer CA, Dreyer BP, Burtchen N, Arevalo J, **Hopkins KM**, Bases H, Huang R, Mendelsohn AL. Developmental Trajectories of Social Skills in Low Socioeconomic Status (SES) Infants and Toddlers.  Abstracts of the Society for Developmental and Behavioral Pediatrics Annual Meeting.  Boston, MA, 2010.

OATH SEHD - CASE #295741

REQUEST FOR RELIEF:

For the foregoing reasons, parents request:

36. As public interest relief, parents an order by the DOE prohibiting the issuance of issuing a school location letters without first involving parents in the selection of an appropriate school.

37. As preliminary relief, a pendency order continuing services in the Decision of IHO Edwin Perkins in case No. 248309 covering the 2023-2024 academic year.

38. As preliminary relief before any hearing, IEE's by a psychologist and a developmental pediatrician, each examination costing $5500 for a total of $11,000.

39. Continued placement at Gersh Academy;

40. Continuation of 20 hours per week of home based 1:1 ABA therapy.

41. Continuation of 30 minutes per school day of speech therapy.

42. 100 hours of compensatory education comprising 50 hours of individual or group speech therapy and 50 hours of 1:1 ABA therapy focused on speech.

Dated: June 30, 2025

*Jerry Toth*

JERRY TOTH, *Attorney for Terence Toth*
LAW OFFICE OF J. G. TOTH
43-32 Kissena Blvd. 15B, Flushing, N.Y. 11355
Telephone (917) 576 9318
tothjerry1@gmail.com

20

OATH SEHD - CASE #295741

**Marian Vasquez**

| | |
|---|---|
| **From:** | Jerry Toth <tothjerry1@gmail.com> |
| **Sent:** | Monday, June 30, 2025 6:35 AM |
| **To:** | Impartial Hearing Office; Reeves Stacey; Cheryl Williams; ServiceECF@law.nyc.gov; DOE Subpoenas |
| **Subject:** | [EXTERNAL] Complaint for 2025-2026 School Year, Toth, Henry Terence |
| **Attachments:** | Complaint.pdf |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Dear Impartial Hearing Office:

The purpose of this message is to submit a complaint on behalf of **Toth, Henry Terence, NYCID: 224465203.**

May you please issue a docket number, assign an IHO to hear this case?

Your valuable assistance is highly appreciated.

Best,

Jerry Toth, *Attorney for Terence Toth*

--
Law Office of J. G. Toth
43-32 Kissena Blvd. 15B
Flushing, N.Y. 11355
telephone (917) 576 9318

1