25-cv-3317 (NRM) (TAM)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

JERRY GEZA TOTH, individually and on behalf of T.T.,

Plaintiff,

- against -

NEW YORK CITY DEPARTMENT OF EDUCATION,

Defendant.

**DEFENDANT'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT**

**STEVEN BANKS**
*Corporation Counsel of the City of New York*
*Attorney for Defendant*
*100 Church Street*
*New York, N.Y. 10007*

*Of Counsel:*

Jaimini Vyas
Tel: (212) 356-2079
jvyas@law.nyc.gov

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ...................................................................................ii

PRELIMINARY STATEMENT ............................................................................ 1

PERTINENT FACTS ........................................................................................... 2

ARGUMENT ....................................................................................................... 4

    POINT I ......................................................................................................... 4

        PLAINTIFF LACKS STANDING TO DEMAND A
        PENDENCY ORDER FOR FUTURE SCHOOL
        YEARS AND THIS CLAIM IS UNRIPE. ..................................................4

    POINT II ........................................................................................................ 5

        THE UNLAWFUL "PENDENCY ORDER"
        PLAINTIFF SEEKS WOULD VIOLATE THE
        IDEA. ......................................................................................................5

    POINT III....................................................................................................... 7

        PLAINTIFF IS NOT ENTITLED TO A
        "PENDENCY ORDER" FOR THE PERIOD FROM
        JUNE 30, 2024 UNTIL AUGUST 23, 2024
        BECAUSE NO PROCEEDING FOR SY 2024-25
        WAS PENDING DURING THAT PERIOD. ............................................7

    POINT IV....................................................................................................... 8

        UNDER 20 U.S.C. § 1415(J), PENDENCY
        PLACEMENT FOR A SCHOOL YEAR IS TIED
        TO PROCEEDINGS FOR THAT SCHOOL YEAR.
        ......................................................................................................8

        A.  Cases from this Circuit establish that pendency
            entitlements under 20 U.S.C. § 1415(j) for a
            given school year commence when a DPC
            challenging the IEP for that school year is filed............................. 10

        B.  Plaintiff cites cases that discredit Plaintiff's
            meritless argument regarding when pendency
            commences for a given school year.................................................. 12

CONCLUSION.................................................................................................... 15

**Page**

CERTIFICATE OF COMPLIANCE ......................................................................... 17

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*A. J. T. by & through A. T. v. Osseo Area Schs., Indep. Sch. Dist. No. 279*,
605 U.S. 335 (2025)....................................................................................................7

*Bd. of Educ. v. Schutz*,
290 F.3d 476 (2d Cir. 2002)....................................................................................14

*Berardi v. Berardi*,
No. 23-1011-CV, 2024 WL 1269902 (2d Cir. Mar. 26, 2024)..................................4

*de Paulino v. New York City Dep't of Educ.*,
No. 22 CIV. 1865 (PAE), 2024 WL 3046025 (S.D.N.Y. June 18, 2024) ........................10, 11

*Doe v. East Lyme Bd. Of Educ.*,
790 F.3d 440 (2d. Cir. 2015)....................................................................7, 12, 13

*J.G. v. Kiryas Joel Union Free Sch. Dist.*,
777 F. Supp. 2d 606 (S.D.N.Y. 2011) ....................................................................11

*J.R. v. N.Y.C. Dep't of Educ.*,
748 F. App'x 382 (2d Cir. 2018) ..............................................................................6

*J.S. v. Scarsdale Union Free Sch. Dist.*,
826 F. Supp. 2d 635 (S.D.N.Y. 2011) ......................................................................6

*Mackey v. Bd. of Educ.*,
2005 U.S. Dist. LEXIS 15908 (S.D.N.Y. Mar. 9, 2005) ........................................14

*N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*,
883 F.3d 32 (2d Cir. 2018)........................................................................................1

*Sch. Comm. of Burlington*, 471 U.S. 359 (1985) ............................................................6

*Sonterra Cap. Master Fund Ltd. v. UBS AG*,
954 F.3d 529 (2d Cir. 2020)......................................................................................4

*T.M. v. Cornwall Cent. Sch. Dist.*,
752 F.3d 145 (2d Cir. 2014)................................................................................5, 13

*Mackey ex rel. Thomas M. v. Bd. of Educ. For Arlington Cent. Sch. Dist.*,
386 F.3d 158 (2d Cir.), *supplemented sub nom. Mackey v. Bd. of Educ. for
Arlington Cent. Sch. Dist.*, 112 F. App'x 89 (2d Cir. 2004)....................................13

**Cases**                                                                    **Pages**

*Thomason v. Banks*,
    No. 25-475, 2026 WL 201127 (2d Cir. Jan. 27, 2026) ............................................9

*Weaver v. Millbrook Cent. Sch. Dist.*,
    812 F. Supp. 2d 514 (S.D.N.Y. 2011) ..................................................................14

**Statutes**

20 U.S.C. § 1412(a)(10)(C)(iii) ...............................................................................3, 6

20 U.S.C. § 1412(a)(10)(C)(iii)(I)(aa) .....................................................................3, 6

20 U.S.C. § 1412(a)(10)(C)(iii)(I)(bb) ...................................................................2, 11

20 U.S.C. § 1412(d)(1)(B)(i) ......................................................................................6

20 U.S.C. § 1414(d)(4)(A) ...................................................................................2, 5, 9

20 U.S.C. § 1415(f)(3)(E)(ii) ......................................................................................6

20 U.S.C. § 1415(j) ..........................................................2, 3, 5, 7, 8, 9, 10, 13, 14, 15

20 U.S.C. § 1415(j) *and* (k)(4) ..................................................................................9

20 U.S.C. § 1415(k)(4) ...............................................................................................7

**Other Authorities**

34 C.F.R. § 300.324(b) ............................................................................................5, 9

Fed. R. Civ. P. 12(b)(1) ...........................................................................................2, 4

Fed. R. Civ. P. 12(b)(6) ..............................................................................................2

## PRELIMINARY STATEMENT

Defendant New York City Department of Education ("DOE") submits this reply memorandum of law in further support of its motion to dismiss Plaintiff's Complaint, ECF 1, in its entirety. In Plaintiff Jerry Toth, Esq.'s Opposition, he and his Counsel, Anton Mikofsky, Esq., continue to impose, improperly, upon the Court's valuable time and resources by making a meritless demand for an unprecedented perpetual "Pendency Order" establishing T.T.'s placement for future years—something not available under the IDEA—amounting to a judicial waiver of the statutory IDEA special education processes such as annual Individualized Educational Plan ("IEP") development meetings and—in the absence of any facts or briefing—finding that the DOE will always fail the *Burlington-Carter* test to obtain funding for a private school placement for each school year. Plaintiff states that, "[p]ursuant to §1415(j), *the Complaint requests an ongoing pendency injunction*[1] *without limitation to a particular year*. The Complaint's request for relief, ¶57(a), seeks to preserve - for the 2024-2025 school year, and *for future years* - the status quo." Pltf Opp. at 10[2] (emphasis added).

The Court lacks subject matter jurisdiction to adjudicate Plaintiff's unripe claims for a "Pendency Order" for future school years. Plaintiff has failed to allege—let alone demonstrate or even suffer—an injury in fact for those future school years. Plaintiff therefore lacks standing to

---

[1] To obtain the extraordinary and drastic remedy of such a preliminary injunction, Plaintiff "must show: (1) irreparable harm; (2) either a likelihood of success on the merits or both serious questions on the merits and a balance of hardships decidedly favoring the moving party; and (3) that a preliminary injunction is in the public interest." *N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*, 883 F.3d 32, 37 (2d Cir. 2018). Plaintiff here, fails to meet this heightened standard of a "clear or substantial" likelihood of success on the merits and a "strong showing" of irreparable harm as the Student's placement at Gersh Academy in future school years is speculative, the DOE has taken no action to remove T.T. from his current placement at Gersh, and Gersh Academy has not initiated the disenrollment or expulsion of T.T. or even communicated that it will initiate the termination of T.T. from the school by a date certain.

[2] Citations are to the page of the pdf (consistent with ECF's page numbering protocol) as opposed to the internal numbering assigned within the pdf.

demand such a "Pendency Order" from the Court. And such a "Pendency Order" would also violate the IDEA, which requires the IEP Team to assess the student's educational needs no less frequently than annually—be they an increase, reduction, change, or elimination of support and services—and create an IEP for each school year based on the student's changed needs. *See* 20 U.S.C. § 1414(d)(4)(A).

The Court also lacks subject matter jurisdiction to adjudicate Plaintiff's equally infirm claim under 20 U.S.C. § 1415(j) seeking reimbursement for tuition and services from June 30, 2024 until August 22, 2024. Plaintiff filed his Due Process Complaint regarding an alleged denial of a free and appropriate education ("FAPE") to T.T. for School Year ("SY") 2024-25 on August 23, 2024. The pre-DPC relief for reimbursement is unavailable pursuant to 20 U.S.C. § 1415(j)'s "pendency" provision. Although the reimbursement is unavailable to Plaintiff through 20 U.S.C. § 1415(j) because there was no proceeding pending for SY 2024-25 during that period, Plaintiff had properly asserted via his August 23, 2024 DPC his independent claim seeking reimbursement for tuition and services from June 30, 2024 until August 22, 2024 (indeed, for the entire school year) pursuant to the alleged inadequacy of the IEP for SY 2024-25. However, those claims are still pending at the administrative level and unripe for court review. Fed. R. Civ. P. 12(b)(1).

For these reasons and those set forth more fully below, the Court should dismiss Plaintiffs' claims for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) or, in the alternative, for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

## PERTINENT FACTS

On June 18, 2024, Plaintiff emailed to DOE a Ten-Day Notice ("TDN") pursuant to 20 U.S.C. § 1412(a)(10)(C)(iii)(I)(bb). *See* February 19, 2026 Decl. of Andrew Wong, Esq. ("Wong Decl."), ¶ 5 and Exhibit A to Wong Decl. However, the notice was deficient because "parents did not inform the IEP Team that they were rejecting the placement proposed by the public agency to

provide a free appropriate public education to their child, including stating their concerns" with the proposed placement or allege that no placement had been proposed or that no IEP had been created. 20 U.S.C. § 1412(a)(10)(C)(iii)(I)(aa). *See* Ex. A to Wong Decl.

Additionally, Plaintiff strategically chose to not provide to the Court, to DOE, and the administrative judges, a copy of the contract Plaintiff executed with Gersh Academy for T.T.'s placement there during the June 30, 2024 to August 23, 2024 period. This is because, if the date of the contract precedes the June 18, 2024 date of the TDN, Plaintiff would be precluded from obtaining reimbursement on the equities pursuant to 20 U.S.C. § 1412(a)(10)(C)(iii).

In Plaintiff's August 23, 2024 Due Process Complaint, Plaintiff sought reimbursement for tuition and services availed by T.T. for the entire SY 2024-2025, including the duration from June 30, 2024 until August 23, 2024. *See* Wong Decl., ¶ 5, and Exhibit B thereto. This matter was docketed as IHO Case No. 284080. On April 3, 2025, the IHO issued a Findings of Fact and Decision ("FOFD") in Case No. 284080, "find[ing] that the Parent's unilateral placement of Student at Private School for the 2024-2025 school year was not appropriate, and therefore deny[ing] Parent's requested relief for reimbursement and direct funding of Private School's tuition." Ex. A to Wong Decl. at 10. On April 24, 2025, Plaintiff filed his Notice of Intent to Seek Review, before the SRO, of the April 3, 2025 FOFD—seeking that same reimbursement for the duration from June 30, 2024 until August 23, 2024 pursuant to the *Burlington-Carter* analysis. A copy of Plaintiff's April 24, 2025, Notice is attached hereto as "Exhibit A." That claim is presently pending before the SRO. *See* Wong Decl., ¶ 9.

Thereafter, on June 12, 2025, Plaintiff filed the Complaint in this case to obtain, improperly, pursuant to the pendency provision of 20 U.S.C. § 1415(j), reimbursement for tuition and services availed by T.T. from June 30, 2024 until August 23, 2024.

**ARGUMENT**

**POINT I**

**PLAINTIFF LACKS STANDING TO DEMAND A PENDENCY ORDER FOR FUTURE SCHOOL YEARS AND THIS CLAIM IS UNRIPE.**

Plaintiff's demand for a declaration of student's pendency placement in future school years is unripe, and therefore, the Court lack subject matter jurisdiction to adjudicate it. Fed. R. Civ. P. 12(b)(1). "[F]ederal courts cannot exercise jurisdiction over a cause of action '[w]hen the events alleged ... have not yet occurred,' ... and because ripeness is jurisdictional." *Berardi v. Berardi*, No. 23-1011-CV, 2024 WL 1269902, at *2 (2d Cir. Mar. 26, 2024) (quoting *Auerbach v. Bd. of Educ. of the Harborfields Cent. Sch. Dist. of Greenlawn*, 136 F.3d 104, 108-09 (2d Cir. 1998)). "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Id.* Here, Plaintiff engages in multiple layers of impermissible speculation: among them, that no IEP for the future school years will ever be appropriate, that Gersh will always be a suitable placement for T.T. during that future period, and that the DOE will contest T.T.'s pendency placement at Gersh for those as-yet unfiled administrative complaints. Plaintiff's present claim, in essence, rests upon not just "contingent future events" but also nested contingencies within those contingent future events. *Id.*

Moreover, Plaintiff lacks standing to assert claims for those future years because he has not yet suffered an injury in fact. "Article III, Section 2 of the U.S. Constitution limits the jurisdiction of the federal courts to the resolution of cases and controversies. To ensure that this bedrock case-or-controversy requirement is met, courts require that plaintiffs establish their standing as the proper parties to bring suit. To satisfy Article III standing, a plaintiff must have (1) suffered an injury in fact." *Sonterra Cap. Master Fund Ltd. v. UBS AG*, 954 F.3d 529, 533–34 (2d

Cir. 2020) (cleaned up). T.T. and Plaintiff have not suffered a future injury-in-fact in the future as of today.

**POINT II**

**THE UNLAWFUL "PENDENCY ORDER" PLAINTIFF SEEKS WOULD VIOLATE THE IDEA.**

The unlawful "Pendency Order" that Plaintiff seeks would allow Plaintiff to violate the IDEA by prospectively rejecting IEPs for subsequent years, sight unseen, and continue T.T.'s placement at Gersh Academy without having to properly engage with the IDEA's clinical and administrative processes. Absent specific objections to DOE's proposed placement for T.T. in the IEPs for those subsequent school years, Plaintiff has no entitlement to pendency in those future years.

This is because the IDEA requires the parent to participate in good faith in the yearly IEP creation process and comply with the IDEA's procedure to challenge a placement and invoke pendency for that school year by filing a DPC. 20 U.S.C. § 1415(j) does not entitle Plaintiff to a "Pendency Order" because 20 U.S.C. § 1415(j) does not guarantee a disabled child the right to remain in the exact same school with the exact same service providers across multiple years:

> The IDEA's pendency provision does not entitle a disabled child to keep receiving services from the exact same service providers while his proceedings are pending; instead, it only entitles the child to receive the same general type of educational program. It is up to the school district to decide how to provide that educational program, at least as long as the decision is made in good faith.

*T.M. v. Cornwall Cent. Sch. Dist.*, 752 F.3d 145, 171 (2d Cir. 2014) (cleaned up).

To the contrary, 20 U.S.C. § 1414(d)(4)(A) of the IDEA imposes a statutory mandate to review and revise a student's IEP annually. *See also* 34 C.F.R. § 300.324(b). The "IDEA requires an *appropriate* education, not one that provides 'everything that might be thought desirable by

5

loving parents.'" *J.R. v. N.Y.C. Dep't of Educ.*, 748 F. App'x 382, 386 (2d Cir. 2018) (quoting *Walczak v. Fla. Union Free Sch. Dist.*, 142 F.3d 119, 132 (2d Cir. 1998)).

Parents, as members of the IEP Team, *see* 20 U.S.C. § 1412(d)(1)(B)(i), have the right to participate in the IEP creation process each year. *See* 20 U.S.C. § 1415(f)(3)(E)(ii). If the parents disagree with the IEP, as part of a parent's obligation to cooperate in the IEP creation process with the district in good faith, they must provide timely notices to DOE according to 20 U.S.C. § 1412(a)(10)(C)(iii) to "inform the IEP Team that they [a]re rejecting the placement proposed by the public agency to provide a free appropriate public education to their child, including stating their concerns and their intent to enroll their child in a private school at public expense." 20 U.S.C. § 1412(a)(10)(C)(iii)(I)(aa). Notices required by 20 U.S.C. § 1412(a)(10)(C)(iii) give the DOE the opportunity to correct any alleged deficiencies in the IEP before they risk assuming the financial responsibility of an expensive private placement for that year. *See J.S. v. Scarsdale Union Free Sch. Dist.*, 826 F. Supp. 2d 635, 672 (S.D.N.Y. 2011). If parents fail to comply with these timely notice requirements for a given school year, "[t]he cost of reimbursement … may be reduced or denied" for that school year. 20 U.S.C. § 1412(a)(10)(C)(iii).

Even when a parent complies with 20 U.S.C. § 1412(a)(10)(C)(iii), if the "IEP proposed by the school officials was appropriate, the parents would be barred from obtaining reimbursement." *Sch. Comm. of Burlington*, 471 U.S. 359, 374 (1985). Here, the unlawful "Pendency Order" Plaintiff demands would effectively allow Plaintiff to reject every subsequent IEP formulated for T.T. and circumvent the *Burlington-Carter* analysis until DOE makes a better placement "offer" than Gersh Academy, i.e., unless DOE creates an IEP that fully complies with all of Plaintiffs' desires and demands (Plaintiff characterizes this as a "lawful IEP" at Pltf Opp. at 10).

Additionally, a Student's educational placement for a given school year can change from the pendency placement though the decision of a hearing officer or through an agreement between the Parent and DOE, as in ECF 10-1, even during the pendency of proceedings. *See* 20 U.S.C. § 1415(j) and 20 U.S.C. § 1415(k)(4). Thus, T.T.'s pendency placement may change multiple times over the next several school years, and this Court should decline to issue an order allowing Plaintiff to circumvent that process. It is noteworthy that Plaintiff provides neither legal nor factual support for so drastic a remedy as the "Pendency Order" that so significantly departs from "the comprehensive nature of the procedures and guarantees set out in the IDEA." *A. J. T. by & through A. T. v. Osseo Area Schs., Indep. Sch. Dist. No. 279*, 605 U.S. 335, 347 (2025).

## POINT III

### PLAINTIFF IS NOT ENTITLED TO A "PENDENCY ORDER" FOR THE PERIOD FROM JUNE 30, 2024 UNTIL AUGUST 23, 2024 BECAUSE NO PROCEEDING FOR SY 2024-25 WAS PENDING DURING THAT PERIOD.

Plaintiff's demand for a "Pendency Order" for the period from June 30, 2024 until August 23, 2024 must be denied because no administrative or judicial proceeding for SY 2024-25 was pending during that time. Contrary to Plaintiff's contention, for a contested school year, pendency attaches upon the filing of a due process complaint; pendency is not retroactive to the beginning of a contested school year. *Doe v. East Lyme Bd. Of Educ.,* 790 F.3d 440 (2d. Cir. 2015) ("an educational agency's obligation to maintain stay-put placement is triggered when an administrative due process proceeding is initiated, not when an impasse is reached.") Plaintiff cannot dispute that the August 23, 2024 DPC was filed almost two months after the start of SY 2024-25; therefore, under *East Lyme*, Plaintiff has no entitlement to pendency during the time that predates the August 23, 2024 DPC's filing.

**POINT IV**

**UNDER 20 U.S.C. § 1415(j), PENDENCY PLACEMENT FOR A SCHOOL YEAR IS TIED TO PROCEEDINGS FOR THAT SCHOOL YEAR.**

Plaintiff presents an alternative argument for how the DOE is liable under pendency for the June 30, 2024 through August 23, 2024 period: Plaintiff argues incorrectly that T.T.'s pendency claim under 20 U.S.C. § 1415(j) for SY 2024-25 was triggered more three years prior on January 27, 2021, when Plaintiff filed a DPC (IHO Case No. 206350) regarding SY 2019-20 (*see* Exhibit G to Pltf Opp at 2) because, therein, he demanded compensatory services "for parents to use as time permits, over the next five years," and SY 2024-25 fell within the scope of that five-year claim. Pltf Opp at 12 ("In 2021, to challenge the student's educational placement and to request educational services over the next five years, the parents filed a due process complaint in Case # 206350, Exh. G."); *see also* Pltf Opp at 14. Throughout his Opposition, Plaintiff also argues incorrectly that, because his litigation of proceedings concerning DPC 206350 for SY 2019-20 happened to continue during June 30, 2024 until August 23, 2024 and beyond, T.T.'s pendency right under 20 U.S.C. § 1415(j) for SY 2024-25 was automatically invoked without the need to initiate a proceeding for SY 2024-25 as required by the IDEA. Plaintiff's concocted relay race model of pendency runs afoul of the IDEA.

Contrary to Plaintiff's contention, none of T.T.'s prior proceedings entitled Plaintiff to pendency funding at Gersh from June 30, 2024 until August 23, 2024. As an initial matter, Plaintiff's position creates a chronological as well as legal conundrum: Plaintiff's January 27, 2021 DPC in IHO Case No. 206350 did not, and could not, assert an injury-in-fact regarding the SY 2024-25 IEP—and thus invoke pendency under 20 U.S.C. § 1415(j)—for SY 2024-25. Even if the Court were to overlook this temporal anomaly, Plaintiff's 206350 DPC concerned only

compensatory services, not the appropriateness of the IEP for SY 2024-25, and did not include a determination that Plaintiff was entitled to pendency at Gersh in SY 2024-25.

Every school year, a student's placement changes, either because of a new IEP, an agreement between the Parents and DOE, or an administrative order, and thus, pendency would lie at the most recent placement. *See* 20 U.S.C. § 1415(j) *and* (k)(4). 20 U.S.C. § 1414(d)(4)(A) of the IDEA imposes a statutory mandate to review and revise a student's IEP annually. *See also* 34 C.F.R. § 300.324(b).

Meanwhile, administrative and judicial proceedings concerning a school year may continue for several years depending on the complexity of issues, the resources of the forum where the matter is *sub judice*, and the levels and number of appeals pursued. While those proceedings continue through student's subsequent school years, for a given subsequent school year, the Student may have: (1) an implemented IEP for that year; (2) an agreement with DOE regarding the student's educational placement for that school year (even if parties are litigating the provision of FAPE for that school year); (3) an administrative order determining the student's placement for that school year during the time proceedings are pending for that school year; or (4) not filed a DPC for that school year. *Id.* In each case, relief is unavailable to the student pursuant to 20 U.S.C. § 1415(j).

If, hypothetically, DOE does not formulate an IEP for T.T. for SY 2026-27, and two years later, i.e., in SY 2027-28, Plaintiff files a DPC alleging DOE's denial of FAPE for SY 2026-27, Plaintiff cannot obtain reimbursement for SY 2026-27 under 20 U.S.C. § 1415(j). Instead, "[u]nder what is known as the *Burlington/Carter* test, a [parent] may obtain reimbursement for private school tuition if (1) the school district failed to offer the student a FAPE, (2) the [parent's] chosen placement school was appropriate, and (3) the equities favor reimbursement." *Thomason v. Banks*,

No. 25-475, 2026 WL 201127 (2d Cir. Jan. 27, 2026) citing *Ferreira v. Aviles-Ramos*, 120 F.4th 323, 329 (2d Cir. 2024).

A.    **Cases from this Circuit establish that pendency entitlements under 20 U.S.C. § 1415(j) for a given school year commence when a DPC challenging the IEP for that school year is filed.**

Pendency entitlements under 20 U.S.C. § 1415(j) for a given school year commence when a DPC challenging the IEP for that school year is filed. In *de Paulino v. New York City Dep't of Educ.*, No. 22 CIV. 1865 (PAE), 2024 WL 3046025, at *2 (S.D.N.Y. June 18, 2024), on July 8, 2021, A.N.'s parents had filed a DPC seeking funding for A.N.'s placement at iBRAIN for SY 2021-2022. On August 18, 2021, an IHO issued a pendency order for A.N. for SY 2021-2022. *Id.* In the order, the IHO required DOE to "directly fund A.N.'s attendance at iBrain School with the cost of related services during the 2021–2022 school year," and to "reimburse the costs of A.N.'s special transportation for that year." *Id.* at *2 (cleaned up). Consistent with the IDEA, the IHO's pendency order stated that the pendency order "shall remain in effect from July 8, 2021, which is the date of the filing of the due process request." *Id.* at *5. Plaintiffs filed "the instant action on March 4, 2022, … [and] Plaintiffs moved for a preliminary injunction to require the DOE to immediately fund the students' pendency placements for the 2021–2022 extended school year." *Id.* at *3.

The *de Paulino* court rejected the argument Plaintiff makes here—that reimbursement should be keyed to July 7, 2021, the start of the 2021-22 school year implicated by the pendency order, *see id.* at *4—and explained that the Second Circuit has held that the obligation to provide stay-put services is only triggered when Parent files a DPC:

> The Second Circuit has held that "the [stay-put] statute is clear that the [agency's] obligation to provide stay-put services [is] not triggered until the Parent's administrative complaint [is] filed." *Doe v. E. Lyme Bd. of Educ.,* 790 F.3d 440, 456 (2d Cir. 2015). That is because the "provision governs the obligations of parties during 'the pendency of any proceedings conducted pursuant to this section,' and

the word 'proceeding' is used in § 1415 exclusively to describe administrative due process proceedings and judicial actions[.]" *Id.* at 455 (quoting 20 U.S.C. § 1415 (emphasis added)) (internal citations omitted). In other words, the genesis of a pendency obligation is the pendency of a proceeding—either a Due Process Complaint or judicial proceedings.

Here, A.N.'s DPC was emailed to the Impartial Hearing Office at 6:57 p.m. on July 7, 2021. Kapoor Decl. ¶ 10; id., Ex. 2 (email submitting DPC). Impartial Hearing Office rules state that complaints received outside of business hours (after 5 p.m.) will not be deemed filed until the next business day. *Id.* Thus, the DPC was deemed filed on July 8, 2021. ***Because July 8, 2021, marks the day that the due process proceedings commenced, DOE's pendency obligations likewise began that day***.

*Id.* at *5 (emphasis added).

Similarly, in *J.G. v. Kiryas Joel Union Free Sch. Dist.*, 777 F. Supp. 2d 606, 643 (S.D.N.Y. 2011), the Court held that "R.G. and J.G. triggered N.G.'s pendency entitlements when they filed the due process demand notice on October 6, 2005." The Court explained that "[t]he pendency of IDEA proceedings also triggers what is referred to as the statute's stay-put provision, which provides that during the pendency of any proceedings conducted pursuant to this section, unless the state or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of such child." *Id.* at 641–42 (citing 20 U.S.C. § 1415(j), 34 C.F.R. § 300.518(a) (2007), N.Y. Educ. L. § 4404(4)(a)(2010)) (cleaned up). As relevant here, Plaintiff invoked the stay-put provision of the IDEA for SY 2024-25 on August 23, 2024 by filing his DPC on that date; therefore, pendency obligations arose on August 23, 2024—not on any other prior date.

Additionally, in this case, Plaintiff emailed to DOE an improper Ten-Day Notice pursuant to 20 U.S.C. § 1412(a)(10)(C)(iii)(I)(bb) on June 18, 2024, informing DOE that they had *already* placed T.T. at Gersh Academy. *See* Ex. A to Wong Decl. By that time, Plaintiff knew full well that he wanted to contest FAPE for SY 2024-25 and could have filed his DPC timely. Plaintiff, an attorney represented by Counsel, and a prolific litigant who has filed multiple DPCs against the

DOE in the past, has no one but himself to blame for failing to commence proceedings for SY 2024-25 timely before June 30, 2024. Plaintiff provides no reason for the Court to relieve him of the consequences of this choice, and the Court should not do so *sua sponte*.

**B.    Plaintiff cites cases that discredit Plaintiff's meritless argument regarding when pendency commences for a given school year.**

The cases that Plaintiff quotes haphazardly in his Opposition brief do not support Plaintiff's incorrect representation of law that "[c]onsistently and uniformly, Second Circuit caselaw holds that a single, substantively continuous legal dispute about a child's placement can trigger a continuous stay-put protection, even if it spans multiple calendar years." Pltf Opp at 25.

First, in *Doe v. East Lyme Bd. of Educ.*, 790 F.3d 440, 445 (2d Cir. 2015), the Second Circuit "h[e]ld that an educational agency's obligation to maintain stay-put placement is triggered when an administrative due process proceeding is initiated, not when an impasse is reached." Contrary to Plaintiff's representation to this Court, *East Lyme* did not involve any pendent proceeding concerning a prior school year. In *East Lyme*, "[u]p through the 2008–2009 school year, the Board and the Parent agreed on individualized education plans ("IEPs")." *Id.* In "June 17, 2009, the Parent met with Board representatives to discuss the 2009–2010 placement" where "[t]he parties reached an impasse." *Id.* at 446 (2d Cir. 2015). "At the June 2009 IEP Team meeting, [Parent] repeatedly demanded that the Board continue to provide stay-put placement" according to the 2008–2009 IEP. *Id.* at 454. A month later, the Board issued an IEP, which the Parent rejected. *Id.* Almost a year later, on April 27, 2010, the Parent filed an administrative due process complaint. *Id.* The district court eventually held, incorrectly, that the stay-put obligation was triggered on June 17, 2009, when the parties reached an impasse. *Id.* at 455.

The Second Circuit vacated and remanded, holding that "[t]he plain language of the stay-put provision supports the Board's position" that "any such obligation was triggered when the

Parent initiated administrative due process proceedings on April 27, 2010." *Id.* The court explained that "the Parent filed her due process complaint almost a full year after the impasse was reached. In any event, the statute is clear that the Board's obligation to provide stay-put services was not triggered until the Parent's administrative complaint was filed." *Id.* at 456. Given the Second Circuit's reasoning, the court would have reached the same holding even if *East Lyme* had been engaged from June 17, 2009 through April 27, 2010 in litigating proceedings concerning a previous school year.

Second, in *T.M. ex rel. A.M. v. Cornwall Cent. Sch. Dist.*, 752 F.3d 145, 155 (2d Cir. 2014), the plaintiff properly invoked Student's pendency right under 20 U.S.C. § 1415(j) for SY 2010-11 in the DPC for that school year:

> On June 16, 2010, T.M.'s parents informed Cornwall that they considered the April 2010 IEP insufficient. They subsequently sent Cornwall a due process complaint notice requesting an impartial hearing. *See* 20 U.S.C. § 1415(b)(6), (b)(7)(A), (f); N.Y. Educ. Law § 4404(1). That complaint notice also invoked T.M.'s rights under the IDEA's pendency provision, asserting that Cornwall was required to provide T.M. with the special education services listed in the May 2009 IEP (as T.M.'s then-current educational placement) until the impartial hearing and any subsequent proceedings were completed. *See* 20 U.S.C. § 1415(j)."

In fact, for reasons unrelated to this case, the *T.M.* court held that "the district court [] erred in believing that Cornwall was obligated to afford T.M. 'stability and consistency' by keeping him with the same private service providers," *id.* at 172, and, separately, vacated the judgment and "remand[ed] for the district court to determine whether tuition reimbursement is appropriate under the *Burlington/Carter* test and to fashion an appropriate remedy." *Id.* at 170.

Third, *Mackey ex rel. Thomas M. v. Bd. of Educ. For Arlington Cent. Sch. Dist.*, 386 F.3d 158 (2d Cir.), *supplemented sub nom. Mackey v. Bd. of Educ. for Arlington Cent. Sch. Dist.*, 112 F. App'x 89 (2d Cir. 2004), clearly illustrates that pendency under 20 U.S.C. § 1415(j) for a given

13

school year is tied to the initiation of proceedings for that school year. In *Mackey*, the proceedings

for SY 1999-2000 were pending before the IHO when parents filed their DPC for 2020-2021 SY:

> Although the IHO had not yet issued a decision on the parents'
> tuition reimbursement claim for Maplebrook for the 1999–2000
> school year, the CSE presented the parents with an IEP for the 2000–
> 2001 school year, which the parents rejected during an August 31,
> 2000 meeting. At the meeting, the parents informed the District that
> they would be placing T.M. at Maplebrook for a second year. … On
> January 6, 2001, the parents formally requested an impartial hearing,
> seeking tuition reimbursement relating to T.M.'s placement at
> Maplebrook for the 2000–2001 school year.

*Id.* at 161. Noting that Parents would be "entitled to tuition reimbursement on a pendency basis for

at least part of the 2000–2001 school year," *id.* at 164, the *Mackey* court vacated the complete

denial of the pendency claim and asked the district court, on remand, to "make findings on the

appropriate date that T.M.'s pendency placement at Maplebrook took effect during the 2000–2001

school year. From that date until the end of the school year, the District will be responsible for

tuition reimbursement on a pendency basis." *Id.* at 165.[3]

> *Fourth*, Plaintiff also cites *Bd. of Educ. v. Schutz*, 290 F.3d 476 (2d Cir. 2002), another

case that controverts Plaintiff's meritless assertion that appeals preserve stay-put across years. *See*

Pltf Opp at 24 (citing *Schutz*, 290 F.3d at 484, although it stands for no such proposition):

> [T]he Schutzes [] rejected the 1999–2000 IEP, re-enrolled Kevin at Kildonan, and
> subsequently requested a hearing before an impartial hearing officer, seeking tuition
> reimbursement for the 1999–2000 school year.
>
> …

---

[3] On remand, the district court found that the school district's pendency obligation began at the commencement of the proceeding, and observed that it was "not clear to this court why [the Plaintiffs] did not seek an IHO hearing in September 2000, at the very outset of the school year in question." *Mackey v. Bd. of Educ.*, 2005 U.S. Dist. LEXIS 15908, at *6 (S.D.N.Y. Mar. 9, 2005). Plaintiffs have provided no reason for their delay in filing the DPC. *Mackey*, 2005 U.S. Dist. LEXIS 15908, at *6; *Weaver v. Millbrook Cent. Sch. Dist.*, 812 F. Supp. 2d 514, 527 (S.D.N.Y. 2011) (denying retroactive application where Plaintiff knew it could file a DPC, but did not for a year; especially, since Plaintiffs' delay in filing the DPC was not attributable to the Defendants).

> At the administrative hearing, the Schutzes sought to invoke the pendency provision, also known as the "stay put" provision, of the IDEA, at 20 U.S.C. § 1415(j), and requested an interim ruling that the District be ordered to pay Kevin's tuition at Kildonan during the pendency of the proceedings concerning their 1999–2000 school year reimbursement claim.

*Id.* at 478. Indeed, the *Shutz* court held that the "District was [] required to pay the costs of tuition at Kildonan during the pendency of the proceedings concerning the District's proposed IEP for the 1999–2000 school year." *Id.* at 485.

Thus, none of the cases that Plaintiff cites support his erroneous legal assertion that "a single, substantively continuous legal dispute" about a child's placement triggers a continuous stay-put protection under 20 U.S.C. § 1415(j) spanning multiple school years, irrespective of the change in Student's educational placement during each of those school years or without the existence of a dispute about the Student's placement for that school year.

Plaintiff's remaining assertions and allegations are meritless, misrepresentations, and misdirections that remain inapposite to the reliefs Plaintiff has attempted to obtain from the Court in this litigation.

## **CONCLUSION**

For all the foregoing reasons, Defendants respectfully submit that the Court should dismiss with prejudice Plaintiff's Complaint in its entirety and grant Defendants such other and further relief that the Court deems just and proper.

Dated:        February 19, 2026
              New York, New York


                            **STEVEN BANKS**
                            Corporation Counsel of the
                            City of New York
                            *Attorney for Defendants*
                            100 Church Street
                            New York, New York 10007

By:

_____
Jaimini A. Vyas
*Assistant Corporation Counsel*
(212) 356-2079
jvyas@law.nyc.gov

**<u>CERTIFICATE OF COMPLIANCE</u>**

Counsel of Record hereby certifies that this 15-page memorandum is within than the 15 double-spaced pages permitted by Your Honor's Individual Rule 5.3.1. Counsel relies on the word count function of the computer program used to prepare this brief.

Dated:          New York, New York
                February 19, 2026


_____
Jaimini A. Vyas
*Assistant Corporation Counsel*