# EXHIBIT C

- NYC: 284080

## FINDINGS OF FACT AND DECISION

| | |
|---|---|
| Case Number: | 284080 |
| Student's Name[1]: | H▓▓▓T▓▓▓▓T▓▓▓ |
| Date of Birth: | ▓▓▓▓2007 |
| School District: | 25 |
| Hearing Requested by: | Fatmira Toth |
| | |
| Request Date/Date Complaint Filed: | 8/23/2024 |
| Date(s) of Hearing: | 3/3/2025 |
| | |
| Actual Record Closed Date: | 04/03/2025 |
| Date of Decision: | 04/03/2025 |
| | |
| Time Sensitive | No |
| Hearing Officer: | Carina Patritti, Esq. |

---

[1] Personally identifiable information is attached as Appendix A, "Redaction Identification Page," to this decision and must be removed prior to public distribution.

**NAMES AND TITLES OF PERSONS WHO APPEARED ON 3/3/2025**

<u>For the Student:</u>
Jerry Toth, Esq., Parent's counsel
Fatmira Toth, Parent
Dr. Karen M. Hopkins, Developmental Pediatrician
Candis Musgrave, ABA therapist
Karen Tarricone, Educational Program Coordinator
Cindy Quach, English tutor
Vanessa Li, Math Tutor
Dr. Andrew Darn, Neuropsychologist

<u>For the Department of Education:</u>
Averi Aburto, Esq.

## INTRODUCTION AND PROCEDURAL HISTORY [2]

This is a decision in a hearing under the Individuals with Disabilities Education Act ("IDEA"), and New York Education Law. The Parent filed this case on 8/23/2024. In the Due Process Complaint (DPC), Parent alleges that the DOE did not offer the student a free and appropriate public education (FAPE) for the 12-month 2024-2025 school year. By way of relief, Parent seeks an of reimbursement/direct funding for Student's Private School tuition, direct funding for 20 hours of 1:1 at-home Applied Behavior Analysis (ABA), and reimbursement for 5 hours of Math and English tutoring, for the 2024-2025 school year. Considering the above and as more fully discussed below, I find that a) the DOE did not provide Student a FAPE for the 2024-2025 school year; b) the Private School fails to offer Student specially designed instruction sufficient to meet Student's needs during the 2024-2025 school year; c) I deny the 20 hours of at-home ABA and reimbursement for Math and English tutoring.

This is a decision in a hearing being rendered pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq., and its implementing regulations, 34 C.F.R. § 300 et seq., and the New York State Education Law, § 4404 et seq., and its implementing regulations, 8 NYCRR § 200.5 et seq. Any alleged violations of section 504 of the IDEA are subsumed under the IDEA and therefore, no additional analysis is required.

A prehearing conference took place on 09/25/2024. Prior to the due process hearing (DPH), Parent's counsel made a "pendency" request on a matter that was already decided on in a case that was not before me. IHO Exh. I. [3] Parent's counsel also made a request for interim independent educational evaluations (IEEs), which I initially granted orally on the record. However, DOE attorney asked me to reconsider my decision and gave her arguments via email, to which Parent's counsel responded to.[4] IHO Exh. IV; IHO Exh. V. I revisited my prior decision and denied Parent's counsel's request for interim IEEs. At a status conference, Parent's counsel proposed to submit a piano teacher as a witness to testify that Student needs 1:1 instruction. I denied that request as I told Parent's counsel that I can exclude witnesses/ testimony if I find the testimony would be duplicative to the other witnesses Parent proposed. I held a closed hearing on 3/3/2025.[5] At the hearing, DOE did not submit any disclosures nor affidavit testimony. They conceded Student was denied a FAPE for the 2024-2025 school year. I admitted several of Parent's exhibits into evidence and excluded others, with several objections from DOE attorney. [6] Parent's Counsel presented seven witnesses via affidavit testimony. DOE cross-examined Parent's witnesses. I gave the parties an opportunity to submit a written opening. Parent submitted a written opening statement and made an oral closing statement. IHO Exh. VII. DOE attorney made opening and closing statements. After closing statements, Parent's counsel requested to submit another exhibit which was the school contract. I denied that request.

---

[2] This matter was originally on the settlement track for many weeks until the parties could not resolve the case and proceeded to a due process hearing.
[3] I did not rule on any pendency issue as the DOE already issued a signed pendency form in this matter.
[4] I had not yet made a written IEE decision when DOE attorney emailed me to reconsider my decision. Parent's counsel also withdrew their IEE request as final relief at the DPH.
[5] The transcript states the DPH was held on 02/03/2025 which is an error. I stated the wrong date at the DPH but for simplicity, I will keep the date stated at the DPH when citing the record.
[6] Please note that we went through all of Parent's disclosures off the record but forgot to press the "record" button. Once we went back on the record, I summarized DOE's objections, Parent's responses and proceeded to admit and exclude several exhibits.

# FINDINGS OF FACT[7]

Student is a known Student to the Committee on Special Education (CSE), however the CSE did not hold a CSE meeting prior to the 2024-2025 school year to develop an Individualized Education Program. P-O. However, Student received a school location letter. P-L. Via a ten-day notice (TDN) through Parent's counsel, Parent stated that they were placing the student at Private School and also gave a brief background of Student's educational and legal history within that letter. P-N. The TDN further states that a medical doctor recommended Private School and Student requires a private specialized school to teach students with autism. *Id.* Parent did not express their concern that there was no IEP in place for the upcoming school year in that TDN. Though there is no contract in evidence, Parent testified that she signed a contract with Private School in July 2024 but does not remember when exactly and was unsure of the amount. 02/03/2025 Tr. 121. When I further inquired about a ballpark figure, she said it was around $130,000.00 to $140,000.00 and had paid perhaps $200.00 or $250.00 to Private School for the 2024-2025 school. *Id.* She further testified that she has a financial obligation for tuition if she fails in this hearing. 02/03/2025 Tr. 122.

Student was diagnosed with autism spectrum disorder level 3 and combined ADHD. P-BB-3; P-AA-4. Student underwent an evaluation in 2019 and was seen by a developmental pediatrician. Developmental Pediatrician testified that Student requires 40 hours of Applied Behavior Analysis (ABA) and that she recommends Private School. However, Developmental Pediatrician acknowledged that Private School does not offer 40 hours of ABA. 02/03/2025 Tr. 59. She also recommends 20 hours of at-home 1:1 ABA therapy since Student cannot receive that at Private School. Developmental Pediatrician testified that Student receives only 10-20 hours of 1:1 ABA instruction at Private School. P-AA.

Neuropsychologist testified that he performed a comprehensive evaluation in 2019 (Student was 11 years old and 7 months at the time). P-G.[8] Student is now 17 years old. Neuropsychologist testified that it is important to evaluate every few years, typically every 3-5 years, to get an accurate picture of someone's abilities. 02/03/2025 Tr. 125. Given that it is almost 6 years after Student's comprehensive evaluation, and 5 years would have been in May 2024 (which is the latest timeframe Neuropsychologist recommended that a student be re-evaluated), I give very little weight to an outdated evaluation and its recommendations. Neuropsychologist testified on cross that he last had contact with the Student perhaps in either 2021 or 2022 when he made an observation of Student working with his ABA therapist. 02/03/2025 Tr. 126. He also observed Student via video when he spoke with his parents in 2020 via zoom. P-BB-3. He observed that Student continued to have extreme delayed communication skills, adaptive functioning skills, social skills, and significant attention deficits. 02/03/2025 Tr. 126-127. Neuropsychologist testified that Student needs supervision of a Board Certified Behavior Analyst (BCBA) and needs 1:1 instruction. P-BB-5. He further testified that teaching Student in a group of students could not possibly control Student's behavior sufficiently to make him pay attention. *Id.*

English Tutor is not a certified teacher in New York state but she is pursuing a degree in dentistry. 02/03/2025 Tr. 63. She believes she started teaching Student in 2016 and currently provides 5

---

[7] Although only portions of the evidence are referenced, the testimony and documents were reviewed in full.
[8] I note that the affidavit had a notarization dated Feb. 24th, 2024, however Neuropsychologist testified it was notarized in 2025 and that it must be a typographical error.

hours per week of English tutoring at Student's home usually after school which is split between several days depending on the week. 02/03/2025 Tr. 64. She charges $50.00 per hour. 02/03/2025 Tr. 65. English tutor testified in her affidavit that she is preparing Student for the New York state Regents exam. P-GG. On cross, she also testified that if Student has questions about homework, they will go over that in the session. 02/03/2025 Tr. 66. She also teachers him reading, writing, and reading comprehension. 02/03/2025 Tr. 68. English Tutor testified that in order to learn Student needs stability, structure and repetition and requires 100% focus of a teacher. P-GG.

Math Tutor testified that she did not write her affidavit, but Parent's counsel actually wrote it, but that she did read it and edited it. 02/03/2025 Tr. 105-106. I find that her affidavit is not reliable as it was written by Parent's counsel, as it also has the same language as Parent's affidavit in the "conclusion" part of the affidavit. P-HH-4; P-DD. I find that Math Tutor's testimony on cross is more reliable that her written affidavit. Math Tutor testified that she is not certified teacher but does work at a private school with children with autism. 02/03/2025 Tr. 99. She began tutoring Student in spring of 2021. 02/03/2025 Tr. 99-100. Math Tutor does 2 days a week of at-home math tutoring with Student, typically after school hours or on weekends, which last between 2 hours or 2.5 hours. 02/03/2025 Tr. 100. Math tutor charges $50.00 per hour. 02/03/2025 Tr. 101. Math tutor is working on materials such as worksheets, doing test materials, utilizing old regents exam questions and some textbook materials as well. *Id.* It sometimes includes Private School homework. *Id.* Math tutor primarily works on regents preparation. 02/03/2025 Tr.106. She also testified that she believes that without her tutoring, Student would not be making any progress in math and that Private School alone is not enough to prepare him for Regents. 02/03/2025 Tr. 107. Math tutor also testified that she believes that there are no textbook instructions at Private School and that when she works with Student it is a lot more supplemental and more beneficial than what he is getting at Private School. *Id.* [9]

ABA therapist's gave direct testimony also via affidavit. I note that her "affidavit" (which was not notarized although sworn on the record) has the wrong impartial hearing officer name on it and the wrong case number, and wrong exhibit letter, though she testified she signed this in February of this year (2025). P-FF.[10] I also find her affidavit to not be completely reliable due to these issues and therefore give her affidavit little weight. I give her testimony on cross more weight. ABA therapist has a master's in special education and has been a public-school teacher for over 20 years.[11] She is not certified in ABA, but ABA trained. 02/03/2025 Tr. 75-76. ABA therapist testified that special education teacher support services (SETSS) is the same thing as ABA and used interchangeably. 02/03/2025 Tr. 75. ABA therapist has been working with Student for more than 6 years. 02/03/2025 Tr. 79. She works on community integration and focuses on skills to function at home and in the broader society. 02/03/2025 Tr. 76.  For example, she works on how to purchase items for a meal, to calculate what the sale price is to further him into society. 02/03/2025 Tr. 77. She testified that she works on the skills that go into the community, and to make sure Student's successful in society. *Id.* She further testified on cross that "…what we do at home helps him to actually be an active citizen in society and generalize the skills he was taught at [Private School] as well as what we've been working on. So, once again,

---

[9] This contradicts Math Tutors testimony in her affidavit which states that Private School is appropriate for Student, which is another reason why I do not find her affidavit to be completely reliable.

[10] Though labeled on the PDF as P-EE, I will refer to it as P-FF as stated in the Table of Contents.

[11] I note her affidavit says she is a special education teacher for 18 years, and then later on cross also says she has been teaching special education for over 22 years, which is another reason why I would give her affidavit little weight as I believe this document was used for a prior case, before another IHO, and manipulated to include information about the 2024-2025 school year in paragraphs 23- 28.  P-FF.

immediate integration in his community, which is the whole point of the services. We want to make sure he's successful in society, not just at school." 02/03/2025 Tr. 82. When I inquired, she further stated that she works on socialization, community integration, communication while he is in the community at the grocery store for example and implements specific strategies as per the IEP and she tailors it more towards integrating in the immediate community. 02/03/2025 Tr. 83. [12] As a teacher at school, ABA therapist does more academic, test prep work, but at home, it is about what Student is doing in the community. 02/03/2025 Tr. 84-85. Parent testified that ABA therapist provides 20 hours of 1:1 at-home ABA via a computer for this school year and has been providing it remotely since 2020. 02/03/2025 Tr. 110-112. Parent also testified that ABA therapist helps with community skills, like grocery shopping, dealing with money, steps he has to take when he travels, or what he has to do if Student is on a long line at the store. 02/03/2025 Tr. 111-113. She describes it as math, English, community skills, and speech. 02/03/2025 Tr. 113-114. In addition, the SETSS Provider Agency affidavit states that Student has two SETSS providers, however, there is no information about the other ABA therapist or how many hours that person is working with Student. P-R. The rate for the SETSS is $125.00 per hour. P-R.

Educational Program Coordinator also testified via affidavit and was crossed by DOE attorney. I find her affidavit not to be completely reliable in that I do not think it reflects this school year at issue in its entirety and therefore I give it little to no weight. Though she testified on cross that she wrote her affidavit the week before the due process hearing, her affidavit has the wrong case number on it (which is also the same incorrect case number reflected in Parent's Table of Contents and what looks like is from a prior IHO case- *see also* P-EE, ABA therapist's affidavit's header with prior IHO's name). I find that this affidavit was used for the 2023-2024 school year as it also mentions in paragraph 28, a 2023-2024 IEP, and in this matter, no IEP was created for the 2024-2025 school year. Nevertheless, Educational Program Coordinator was crossed, and I give her cross more weight than her affidavit.

Student first entered Private School in July 2020. 02/03/2025 Tr. 89. Student was assessed by related service providers when he first entered school in July 2020 and every year around May or June, they do another assessment. 02/03/2025 Tr. 89-90. Student receives speech language therapy, occupational therapy, physical therapy, and counseling. 02/03/2025 Tr. 93. Student receives 4 sessions of individual speech and 1 in group. 02/03/2025 Tr. 90. Educational Program Coordinator testified that student needs ABA methodologies and discrete trials for academics and that Private School employs ABA methods. P-CC-2. Student attends Private School from 8:30-3:00PM. 02/03/2025 Tr.93. ABA methodology is carried across all his related services, but he does not get discrete trial teachings while he has related services. *Id.* Educational Program Coordinator generally noted that Private School's teachers either have a Bachelor's degree or a Master's degree or are working towards a degree and most have New York state licenses. P-CC-2. However, no information was provided about Student's actual classroom teacher or the assistant, and their qualifications. A "typical" Private School class for Student includes 6 students, a teacher, a teacher assistant, and a paraprofessional for each student. P-CC-3. The paraprofessional works with Student and helps with classwork, assists in re-teaching, assists with academics, provides positive reinforcement, assists him with breaks, and carries out Student's Behavior Intervention Plan. 02/03/2025 Tr.94. She also provides reinforcement and sensory movement breaks. *Id.* It is unclear what the assistant teacher does in the classroom as no information was provided about the role they play. Educational Program Coordinator testified on cross that Student needs more 1:1 than what Private School can provide during the school day and that he would benefit from ABA at home. 02/03/2025 Tr. 90. She feels that for Student to continue the progress he has been making, it is necessary

---

[12] I note that Student does not have an IEP for the 2024-2025 school year.

that Student receive at home ABA. 02/03/2025 Tr. 90-91.  Educational Program Coordinator further stated that Student is making progress at Private School, but he can make more progress if he gets it at home. 02/03/2025 Tr. 91. She testified that home providers collaborate with Private School so that skills that are being taught in school are carried over at home. *Id.*  She further testified that based on reports from teachers it showed Student was making progress.[13] 02/03/2025 Tr.93-94.  Lastly, she testified that Student would make progress without the Math and English tutoring sessions but not as quickly. 02/03/2025 Tr. 92.

Parent also testified via affidavit and was crossed. I also find her affidavit was written by her attorney as it references Parent in the third person in some sections. P-DD-5-6.  I give her cross examination testimony more weight. Parent testified that Private School has given Student a base for his development, however without the services, Student receives at home, Student will have a regression and that he would not progress at the level that he is now. 02/03/2025 Tr. 116. Student needs a lot of repetition and that the ABA therapy and tutoring is benefitting Student. 02/03/2025 Tr. 119. Parent also testified that she "requests" Math and English tutors to prepare Student for his Regents exams in arithmetic and English. P-DD-9.

## CONCLUSIONS OF LAW AND ANALYSIS

The IDEA is a comprehensive statutory framework established by Congress to ensure that students with disabilities are afforded a FAPE. *See* 20 U.S.C. §1400(d)(1)(A); *Schaffer v. Weast*, 546 US 49 (2005). "Under the educational scheme of the IDEA … Parents of students with disabling conditions are guaranteed 'both an opportunity for meaningful input into all decisions affecting their child's education and the right to seek review of any decisions they think inappropriate'" *Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 245 (2d Cir. 2008), *quoting Honig v. Doe*, 484 U.S. 305, 311-12, 108 S. Ct. 592, 598 (1988).

The IDEA directs that, in general, an IHO's decision must be made on substantive grounds based on a determination of whether the student with a disability received a FAPE. 20 U.S.C. § 1415[f][3][E][i]. A school district offers a FAPE "by providing personalized instruction with sufficient support services to permit the child to benefit educationally from that instruction." *Bd. of Educ. v. Rowley*, 458 U.S. 176, 203 (1982).

### *Burden*

School districts have the burden of proof, including the burden of persuasion and burden of production, in IDEA due process hearings, except that a parent or person in parental relationship seeking tuition reimbursement for a unilateral parental placement has the burden of persuasion and burden of production on the appropriateness of such placement. NYS Educ. Law § 4404(1)(c).

---

[13] Educational Director's affidavit gave a general description that Student has studied fractions and double-digit multiplication and now he is learning division and multiplication of fractions, but as stated earlier, I believe this affidavit was used for a prior school year and so I give this affidavit little weight. P-CC.

*FAPE*

The IDEA provides that children with disabilities are entitled to a Free Appropriate Public Education ("FAPE"). 20 U.S.C. § 1400 (d)(1)(A). A FAPE consists of specialized education and related services designed to meet a student's unique needs, provided in conformity with a comprehensive written Individualized Education Program ("IEP"). 34 C.F.R. § 300.13. A school district has offered a student a FAPE when: (a) the board of education complies with the procedural requirements set forth in the IDEA; and (b) the IEP is developed through the IDEA's procedures and is reasonably calculated to enable the student to receive educational benefits *Bd. of Educ. of the Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 206-07 (1982). In order to meet its substantive FAPE obligations, a district must offer a student an IEP that is "reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." *Endrew F. v. Douglas County Sch. Dist. RE-1*, 137 S.Ct. 988, 999 (2017).

Here, the DOE failed to meet its burden at the hearing. DOE attorney did not present any witnesses and did not submit any documentary evidence. DOE conceded a denial of FAPE for the 2024-2025 school year. At the last status conference, DOE attorney stated they were not putting on a prong 1 case, nor bringing any witnesses. A review of the record herein establishes that the weight of the evidence supports the conclusion that the DOE failed to offer Student a FAPE for the 2024-2025 school year.

*Unilateral Placement*

A private school placement must be "proper under the Act." *Florence County Sch. Dist. Four v. Carter*, 510 U.S. 7, 12, 15 (1993); *Sch. Comm. of Burlington v. Dep't of Educ.*, 471 U.S. 359, 370 (1985). This means that the private school must offer an educational program which meet the student's special education needs. See *Gagliardo v. Arlington Cent. Sch. Dist.*, 489 F.3d 105, 112, 115 (2d Cir. 2007); *Walczak v. Fla. Union Free Sch. Dist.*, 142 F.3d 119, 129 (2d Cir. 1998). Parents seeking reimbursement "bear the burden of demonstrating that their private placement was appropriate, even if the IEP was inappropriate." *Gagliardo*, 489 F.3d at 112. Subject to certain limited exceptions, 'the same considerations and criteria that apply in determining whether the [s]chool [d]istrict's placement is appropriate should be considered in determining the appropriateness of the parents' placement.'" *Gagliardo*, 489 F.3d at 112, quoting *Frank G. v. Bd. of Educ. of Hyde Park*, 459 F.3d 356, 364 (2d Cir. 2006).

Parents need not show that the placement provides every special service necessary to maximize the student's potential. *Frank G.*, 459 F.3d at 364-65. When determining whether a unilateral placement is appropriate, "[u]ltimately, the issue turns on" whether the placement is "reasonably calculated to enable the child to receive educational benefits." *Frank G.*, 459 F.3d at 364; see *Gagliardo*, 489 F.3d at 115. A private placement is appropriate if it provides instruction specially designed to meet the unique needs of a student. 20 U.S.C. § 1401(29); Educ. Law § 4401(1); 34 CFR 300.39(a)(1); 8 NYCRR 200.1(ww); *Hardison v. Bd. of Educ. of the Oneonta City Sch. Dist.*, 773 F.3d 372, 386 (2d Cir. 2014).

The Second Circuit has set forth the standard for determining whether parents have carried their burden of demonstrating the appropriateness of their unilateral placement. No one factor is necessarily dispositive in determining whether parents' unilateral placement is reasonably calculated to enable the

child to receive educational benefits. Grades, test scores, and regular advancement may constitute evidence that a child is receiving educational benefit, but courts assessing the propriety of a unilateral placement consider the totality of the circumstances in determining whether that placement reasonably serves a child's individual needs. *Gagliardo*, 489 F.3d at 112, quoting *Frank G.*, 459 F.3d at 364-65). A student's progress at a private placement is a relevant factor in assessing the appropriateness of the placement but is not in itself sufficient to determine that the placement is appropriate. Likewise, lack of progress itself does not mean that the parents' placement was inappropriate. *Weaver v. Millbrook Cent. Sch. Dist.*, 812 F. Supp. 2d 514, 523 (S.D.N.Y. 2011).

In reviewing the record before me, I find that the weight of the evidence does not establish that Student's individual special education needs were addressed by Private School or that the instruction offered was "reasonably calculated to enable the child to receive educational benefits." *Frank G.*, 459 F.3d at 364.

Parent failed to sufficiently prove that Private School identified Student's individual special education needs, that Private School determined appropriate annual goals based on such needs for the 2024-2025 school year, and that Private School developed and utilized a curriculum that allowed Student to make progress towards those goals for the 2024-2025 school year.  Parent failed to provide any specifics regarding Student's school curriculum except his school hours and that Private School utilizes ABA methodology.  P-Q; P-CC. Though Private School is an ABA school, nothing in the record supports that Student's curriculum was specifically tailored to Student's unique needs. Importantly, I have no baseline of this Student, but only outdated evaluations/reports that are either six years old or twelve years old, and therefore, I give those reports little to no weight. P-G; P-H; P-I; P-J. Neuropsychologist testified that he observed Student either in 2021 or 2022 via video. He observed that Student continued to have extreme delayed communication skills, adaptive functioning skills, social skills, and significant attention deficits. 02/03/2025 Tr. 126. However, no other information was provided as to how long that observation was, where it took place,[14] what exactly are Student's needs, how to best address those needs, except a report that is six years old. P-G. In fact, Neuropsychologist testified that a student should be evaluated every three to five years to have an accurate picture of a student's abilities. 02/03/2025 Tr. 125. Given that his evaluation is already outdated, I have no useful information that would inform what are Student's current academic levels, abilities, or deficits or challenges.

Educational Program Coordinator testified that Student was evaluated when he first enrolled at Private School in July 2020, but that he undergoes assessments in all areas including related services, on a yearly basis. 02/03/2025 Tr. 89-90. Student is currently receiving Speech language therapy, physical therapy, counseling, and occupational therapy, but the record lacks any information of what Student's baseline was at the beginning of the school year, what the providers and Student are working on in those sessions, what goals they are working on for the school year, and any methodologies or strategies used that are uniquely tailored to Student. Educational Program Coordinator further testified that Student has a paraprofessional who assists with academics, with sensory movement breaks, positive reinforcement, and carries out his behavior intervention plan. However, there is no information as to what is in the behavior intervention plan, how it was created, or how it is uniquely tailored to Student. In addition, Math Tutor testified that the instruction Student is receiving every day at Private School is not enough to

---

[14] Though I infer that given that ABA therapist provided online at-home ABA services to Student, that Neuropsychologist observed student via zoom.

prepare him for Regents exams and that without the math tutoring she is providing, Student would not be making any progress in math. 02/03/2025 Tr. 107. She further testified that they have been working on word problems for a very long time and believes that at Private School there is no textbook instruction, and Student does not have the ability to drill in material or to fully comprehend it. *Id.* Math Tutor believes that the work they are doing is more beneficial than what Student does at Private School. *Id.*

Here, no evidence was offered into the record with respect to Student's progress during the 2024-2025 school year. In fact, Parent testified that Private School has given Student a foundation for all his development and progress (though did not state what type of progress he has made) and that without additional services at home, he would regress and not be at the level that he is. While Educational Program Coordinator testified that Private School offered Student small class sizes of six students, a teacher, a teacher assistant and a paraprofessional for each student, no documentary evidence regarding Private School was submitted other than a description of the school via a brochure and an outdated report card from the 2023-2024 school year. P-Q; P-S. Educational Program Director testified that Private School offers Student approximately 30 hours of ABA instruction to Student, but that Student requires more. Educational Program Director further gave a generalized statement that she read the reports from the teachers (which reports she is referring to is unclear) and that Student was making progress. 02/03/2025 Tr. 94. I find that her statements are conclusory, vague, and generalized, and do not give specifics as how Student progressed. Educational Director provided no examples as to any progress Student has made, nor was there a school schedule or curriculum in the record to give insight as to Student's academic program or how the school is meeting Student's unique needs. In addition, the math and English tutors' testimonies demonstrate that without their services, Student would not progress in Math or English or pass the Regents.

While Parent asserts Private School was an appropriate setting for Student during the 2024-2025 school year and that Student is progressing during the 2024-2025 school year, Parent's statements are unsupported by the record as no other evidence supporting Parent's general and vague assertions. The testimony and evidence established that the program for Student at Private School for the 2024-2025 school year was not reasonably calculated to enable Student to receive educational benefit, make progress, and met Student's unique needs. I therefore find that the Parent's unilateral placement of Student at Private School for the 2024-2025 school year was not appropriate, and therefore deny Parent's requested relief for reimbursement and direct funding of Private School's tuition. Additionally, as Parent failed to meet their burden, analysis of the remaining *Burlington/Carter* prong is not necessary.

ABA and Math/English tutoring

Similarly, I find that the 20 hours of 1:1 at-home online ABA services, as well as the Math and English tutoring provided to Student exceeds what would be required for the provision of FAPE. In discussing generalization of skills, courts have indicated that school districts are not required, as a matter of course, to design educational programs to address a student's difficulties in generalizing skills to other settings outside of the school environment, particularly where it is determined that the student is otherwise likely to make progress, at least in the classroom setting (*see, F.L. v. New York City Dep't of Educ.*, 2016 WL 3211969, at *11 [S.D.N.Y. June 8, 2016]; *L.K. v. New York City Dep't of Educ.*, 2016 WL 899321, at *8-*10 [S.D.N.Y. Mar. 1, 2016], aff'd in part, 674 Fed. App'x 100 [2d Cir. Jan. 19,

2017]). As to the 20 hours of 1:1 ABA provided to Student, I find that they serve to generalize skills outside the classroom, mainly within the community, and address needs beyond Student's academic goals.[15] ABA therapist repeatedly testified that she works with Student to integrate him into the community and to function in society. In addition, Educational Program Coordinator testified that Student can make *more progress* if he gets ABA at-home, which indicates that the at-home ABA is not required. Parent also testified that the ABA is supposed to help Student with community skills and gave examples of shopping and about traveling. I find that the home-based program is used for the purpose of generalizing the student's skills to the community setting and beyond what the DOE was required to deliver to enable Student to make progress.

As for the Math and English tutoring being provided, it is clear that the focus of these tutoring sessions is to prepare Student for the Regents exams, though it seems they do some homework if Student has questions about it. English tutor testified that she is preparing Student for the New York state exam. Math tutor also gave testimony that she works with testing materials and finds old regents exams to work with Student. She said that Student flies through Private School homework and that they work more on regents They are working on area and perimeter of irregular rectangular shapes, which is what Student is struggling in for the regents exam. 02/03/2025 Tr. 103.

Lastly, Parent testified that essentially more work needs to be done with Student on a constant basis all the time and there is no need to stop just because he stopped going to school. 02/03/2025 Tr. 120. While there seems to be a benefit to the work done with Student outside of school, I find that the DOE is not required to fund these services as part of their offer of FAPE. [16]

Other Relief:
I have reviewed the parties 'remaining contentions and find them to be without merit. Accordingly, any relief not specifically discussed in this decision is denied, and all the Parent's remaining claims not discussed herein are dismissed with prejudice.

The IDEA does not authorize an administrative officer to award attorneys 'fees or other costs to a prevailing party; and entitlement, if any, to costs must be decided by a court of competent jurisdiction. Only a court can decide whether a party is entitled to attorneys 'fees and I would be exceeding the scope

---

[15] Several courts have held that the IDEA does not require school districts, as a matter of course, to design educational programs to address a student's difficulties in generalizing skills to other settings outside of the school environment, particularly where it is determined that the student is otherwise likely to make progress, at least in the classroom setting (see, e.g., *F.L. v. New York City Dep't of Educ.*, 2016 WL 3211969, at *11 [S.D.N.Y. June 8, 2016]; *L.K. v. New York City Dep't of Educ.*, 2016 WL 899321, at *8-*10 [S.D.N.Y. Mar. 1, 2016], aff'd in part, 674 Fed. App'x 100 [2d Cir. Jan. 19, 2017]; *P.S. v. New York City Dep't of Educ.*, 2014 WL 3673603, at *13-*14 [S.D.N.Y. Jul. 24, 2014]; *M.L. v. New York City Dep't of Educ.,* 2014 WL 1301957, at *11 [S.D.N.Y. Mar. 31, 2014]; *K.L. v. New York City Dep't of Educ.*, 2012 WL 4017822, at *14 [S.D.N.Y. Aug. 23, 2012], aff'd, 530 Fed. App'x 81 [2d Cir. July 24, 2013]; *Student X*, 2008 WL 4890440, at *17; *A.D. v. New York City Dep't of Educ.*, 2008 WL 8993558, at *7 [S.D.N.Y. Apr. 21, 2008]; see also *Thompson R2-J Sch. Dist. v. Luke P.*, 540 F.3d 1143, 1152-53 [10th Cir. 2008]; *Gonzalez v. Puerto Rico Dep't of Educ.*, 254 F.3d 350, 353 [1st Cir. 2001]; *Devine v. Indian River County Sch. Bd.*, 249 F.3d 1289, 1293 [11th Cir. 2001]; *JSK v. Hendry County Sch. Bd.*, 941 F.2d 1563, 1573 [11th Cir 1991]).

[16] If Parent had prevailed under prong 2 for the unilateral placement, equities would lie in favor of Parent given that they did not impede the CSE in any shape or form to create an IEP, and gave a proper ten day notice before unilaterally placing Student at Private School. However, there is no evidence that Student requires a 12-month school year program due to "substantial regression" and thus, I would reduce reimbursement to a 10-month program. As for the ABA and after school tutoring, I find equities would also lie in Parent's favor.

of my authority by deciding that the Parent is the prevailing party entitled to costs. Other than the relief set out in my Order below, I find that no basis and/or evidence in the Record supports any additional relief.

**Based upon the above Findings of Fact and Conclusions of Law, it is hereby ORDERED**:

(1)  Parent's request for direct funding and reimbursement for Student's unilateral placement at Private School is DENIED for the 2024-2025 school year;

(2)  Parent's request for direct funding for 20 hours of 1:1 ABA is denied;

(3)  Parent's request for reimbursement for English and Math tutoring is denied;

THIS DUE PROCESS COMPLAINT IS DISMISSED WITH PREJUDICE.

DATED: 04/03/2025

    /s/ Carina Patritti, Esq.
Impartial Hearing Officer

## NOTICE OF RIGHT TO APPEAL

Within 40 days of the date of this decision, the parent and/or the Public-School District has a right to appeal the decision to a State Review Officer (SRO) of the New York State Education Department under section 4404 of the Education Law and the Individuals with Disabilities Education Act.

If either party plans to appeal the decision, a notice of intention to seek review shall be personally served upon the opposing party no later than 25 days after the date of the decision sought to be reviewed.

An appealing party's request for review shall be personally served upon the opposing party within 40 days from the date of the decision sought to be reviewed. An appealing party shall file the notice of intention to seek review, notice of request for review, request for review, and proof of service with the Office of State Review of the State Education Department within two days after service of the request for review is complete. The rules of procedure for appeals before an SRO are found in Part 279 of the Regulations of the Commissioner of Education. A copy of the rules in Part 279 and model forms are available at http://www.sro.nysed.gov.

APPENDIX A – REDACTION IDENTIFICATION PAGE

| Term Used In FOFD | Redacted Information |
|---|---|
| Student | H███ T█████ T██ |
| Parent 1/Guardian | Fatmira Toth/ also known as Mira Toth |
| Parent Attorney/Representative | Jerry Toth |
| District Attorney/Representative | Averi Aburto |
| Private School | Gersh Academy |
| Educational Program Coordinator | Karen Tarricone |
| ABA therapist | Candis Musgrave |
| English tutor | Cindy Quach |
| Math tutor | Vanessa Li |
| Developmental Pediatrician | Dr. Karen M. Hopkins |
| Neuropsychologist | Dr. Andrew Daren |
| SETSS Provider Agency | New York Therapy Placement Services |

# APPENDIX B – DOCUMENTATION ENTERED INTO THE RECORD

## DOE EXHIBITS: NONE

## PARENT EXHIBITS

| Ex | Description | Date | Pg |
|---|---|---|---|
| G | Neuropsyche[17] Examination | 05/13/2019 | 9 |
| H | Health Statement | 08/22/2019 | 1 |
| I | Report | 06/05/2013 | 4 |
| J | Evaluation | 05/21/2019 | 1 |
| L | School Placement Letter | 06/26/2024 | 1 |
| M | Response School Placement | 06/28/2024 | 2 |
| N | 10-day Notice | 06/18/2024 | 2 |
| O | Complaint | 08/22/2024 | 26 |
| P | Motion requesting IEE | 09/23/2024 | 5 |
| Q | Private School Description | Undated | 8 |
| R | Affidavit SETS agency | 09/27/2024 | 2 |
| S | Report Card | 04/16/2024 | 3 |
| T | Practice Exam in Math | 05/02/2023 | 18 |
| U | Student math exercises | 02/24/2025 | 3 |
| V | Practice Exam in English | 04/11/2016 | 12 |
| W | Student Reading Exercises | 02/24/2025 | 3 |
| X | IRS return | 04/06/2024 | 2 |
| Y | Teaching License[18] | 09/01/2006 | 1 |
| Z | Map (google map) | 02/23/2024 | 1 |
| AA | Affidavit of Developmental Pediatrician | 02/24/2025 | 10 |
| BB | Affidavit of Neuropsychologist[19] | 02/24/2025 | 6 |
| CC | Affidavit of Vice Principal at Private School[20] | 02/24/2025 | 7 |
| DD | Affidavit of Parent | 02/23/2024[21] | 11 |
| FF | Affidavit of ABA therapist[22] | 02/24/2024[23] | 6 |
| GG | Affidavit of English Tutor[24] | 01/07/2025 | 3 |
| HH | Affidavit of Math Tutor | 02/24/2025 | 4 |

---

[17] This is a typo from Parent's Table of Contents.
[18] At the hearing, I told Parent's counsel to better reflect the document it should be titled "ABA therapist's teaching certificate".
[19] I note that the actual exhibit's PDF states P-B within the document. However, I will refer to this exhibit as P-BB.
[20] Though this is labeled as Vice Principal, I note that this affidavit states their title is "Educational Program Director". It also has the wrong case no. in the header of her affidavit.
[21] I note that Parent's Table of Contents states 2024.
[22] I also note that the actual exhibit's PDF states P-EE and has the wrong Case no. and wrong IHO name on the header. I will refer to this document as P-FF.
[23] I note Parent's Table of Contents has a date of 02/24/2024 rather than 2025.
[24] This affidavit also has the wrong case no. in the header.

Hearing Officer's Findings of Fact and Decision
Case No.284080

## IHO EXHIBITS

| Ex | Description | Date | Pg |
|---|---|---|---|
| I | Parent's motion for pendency order and an order closing the pleadings | 10/29/2024 | 48 |
| II | Reply in support of Pendency | 10/30/2024 | 9 |
| III | Email re: pendency 11.1.2024 | 11/01/2024 | 4 |
| IV | DOE request to reconsider ruling on IEE | 12/17/202 | 11 |
| V | Parent's opposition to renew and final decision | 12/17/2024 12/18/2024 | 53 |
| VI | Parent's opening statement | undated | 7 |