NEW YORK CITY DEPARTMENT OF EDUCATION
IMPARTIAL HEARING OFFICE

------------------------------------------------------------------x  **IHO Case No. 248309**

MATTER OF T████, H████ T████            **AFFIDAVIT OF**
**DR. KAREN M. HOPKINS, M.D.**

IHO Edward Perkins, Esq.

------------------------------------------------------------------X

STATE OF NEW YORK      )

) s.s.

COUNTY OF NEW YORK    )

 Karen M. Hopkins, declares, under penalty of perjury:

 1.  I submit this affidavit in support of the complaint seeking an Order that Terence continue to attend Gersh Academy at public expense and that he continue to receive 20 hours per week of home-based 1:1 ABA therapy.

 2.  In New York State I am a licensed medical doctor.  The American Board of Pediatrics certified me in General Pediatrics.  I later obtained certification in Neurodevelopmental Pediatrics.

 3.  Currently I work as a Clinical Professor of Pediatrics at the New York University School of Medicine in the Department of Pediatrics Developmental - Behavioral Pediatrics. By specialization, I am a developmental pediatrician.

 4.  My education includes a B.A. from Tufts University in biology and an M.D.  from the New York University School of Medicine.

 5.  Interning at St. Vincent's Hospital and Medical Center, after three years I became that hospital's Chief Resident in Pediatrics.

 6.  In 1986 the Albert Einstein College of Medicine, Rose F. Kennedy Center

1

for Retardation and Human Development granted me a fellowship in Developmental / Behavioral Pediatrics.

7.  At the Albert Einstein College of Medicine I served as an Assistant Professor of Pediatrics.  New York University School of Medicine later offered me the position of Clinical Associate Professor of Pediatrics.

8.  In seven New York City hospitals, I have attended patients:  St. Vincerrt's Hospital and Medical Center, Bronx Municipal Hospital Center, Montefiore Hospital Medical Center North Central Bronx Hospital, Weiler Hospital, Tisch Hospital and Bellevue, Hospital Center.

9.  At the Albert Einstein College of Medicine in Bronx, New York I served as Attending Developmental Pediatrician and Director of the Developmental and Family Services Unit, Children's Evaluation and Rehabilitation Center

10. For the New York City Department of Health, I served as Medical Director for the Bureau for Families with Special Needs.  This position focused on physically handicapped children.

11. For the New York City Board of Education, now renamed, I served on the Advisory Committee of the Infant-Toddler Teen Parent Staff Development Institute.

12.  At New York University Medical Center I served as Attending Pediatrician for premature and high-risk infants.

13.  For New York's Bellevue Hospital Center, in the Division of Ambulatory Pediatrics, I served as the Director for the Early Intervention Program.  At Bellevue Hospital Center, I have also served as Director of the Pediatric Developmental Clinic.

14. In the Department of Pediatrics for the New York University School of

Medicine, I have served as Director of the Pediatric Developmental-Behavioral Fellowship Program.

**Publications**

15. On childhood speech impairments, I have published two articles:

> Hopkins KM, (panel member): Clinical Practice Guideline: Report of the Recommendations - Communication Disorders - Assessment and Intervention For Young Children (Age 0-3 Years), Albany, New York: NewYork State Department of Health,1999, (Publication No. 4218),
>
> Hopkins KM, (panel member): Clinical Practice Guideline: fne CuiAeme Technical Report - Communication Disorders - Assessment and Intervention for Young Children (Age 0-3 Years), Albany, New York:New York State Department of Health, 1999, Publication No 4220).

16. On the developmental disabilities in children I have also published articles.

> Hopkins KM, Grosz J, Cohen H, Diamond G, Nozyce M.: "The Developmental and Family Services Unit-A Model AIDS Project Serving Developmentally Disabled Children and Their Families," AIDS Care 1989: I:28I-5.
>
> Hittelman J, Hopkins, Shah V.: "Neurodevelopmental and Neuropsychological Disabilities", In: Criteria for the Medical Care of Children and Adolescents with HIV Infection, New York, New Yolk: The New York State Department of Health AIDS Institute,1995.

17. T█████: a 16-year old boy, is a patient in the Division of Developmental Behavioral Pediatrics at NYU Langone Medical Center. T█████ was most recently seen in December, 2023 for a follow-up assessment.

### I.    The 2023-2024 IEP overlooks the student's individual diagnosis.

18. T█████ has been followed for many years. He has a diagnosis of Autism Spectrum Disorder (ASD).

19. ASD is a spectrum of diagnosable neurodevelopmental disorders.  ASD typically

presents during the developmental period and includes social communication and interaction difficulties, along with restricted and repetitive behaviors, interests, or activities.

20. T█████ is extremely distractible. In a classroom setting T████e lacks the ability to pay attention to a teacher. A classroom t███r teaching multiple students cannot take the necessary amount of time to instruct T███e individually. As a result T███e can progress and learn only with 1:1 instruction.

21. T█████ continues to have very significant developmental challenges. He has severe Autism Spectrum Disorder. His cognitive level is significantly below average. He has clear difficulties with maintaining attention and focus. His difficulty focusing impacts his ability to learn and function in class.

22. The Individuals with Disabilities Education Act (IDEA) defines a child with a disability as a child:

> (i) with mental retardation, hearing impairments (including deafness), speech or language impairments, visual impairments (including blindness), serious emotional disturbance (hereinafter referred to as 'emotional disturbance'), orthopedic impairments, autism, traumatic brain injury, other health impairments or specific learning disabilities, and
> (ii) Who, by reason thereof, needs special education and related services."

20 U.S.C. §1401(3)(A). Based on my testing and observations, T█████ meets the definition.

23. For 2023-2024 DOE issued to parents an IEP assigning Terence to a public school without sufficient 1:1 instruction. The IEP overlooks that the student cannot learn and progress without 1:1 instruction.

## II. **Following disruptions of his educational placement, the student needs stability.**

24. The source of my information concerning school history is consultation with parents,

and a report by psychologist Jennifer Keluskar.  Dr. Keluskar observed T█████ unable to learn at Q-393 Cocheron, a District 75 school.  The student's academic record includes a school filing in bankruptcy, the same school closing, months without a school, excessive busing, months without instruction during the pandemic.

### a. District 75

26. From 2012 to 2016 T██████ first attended a District 75 school.  The classroom teacher lacked specialized training and experience in education of students on the autism spectrum.

27.  In District 75, the classroom teacher did not know how to teach Terence.  The teacher had no one to advise her.  T██████'s behavior spiraled out of control.  The District 75 classroom teacher and principal advised parents to seek a specialized school. .

### b. AMAC

26.  From 2016 to 2019, T██████ attended AMAC, a Manhattan school specialized in educating students on the autism spectrum.  AMAC filed in bankruptcy.  Terence's classroom teacher and speech therapist resigned.  AMAC promoted an uncertified teaching assistant as a classroom teachers.  T██████'s classroom teachers changed as often as weekly.  Terence showed anxiety.  He gnawed holes in his clothing.  He exhibited temper tantrums, threw objects in the classroom.

### c.  Home without a school.

27.  In June 2019 AMAC closed.  T██████ spent nearly three months at home without a school.  To provide no school to a student with disabilities was clearly inappropriate.

### d.  excessive busing

28.  DOE assigned T███████ AHRC, a school in Brooklyn.  Terence suffered transportation difficulties to reach the school.  Riding the bus 2-4 hours each way, Terence misbehaved.  More than 60 minute of transit time was inappropriate for Terence.

29.  DOE assigned a para to accompany T████.  The para often did not arrive in time to catch the school bus.  Terence either arrived at AHRC late or missed school altogether.

### e.  missed instruction during the pandemic.

29.  During the pandemic T██████ against missed hundreds of hours of school.

## III.  Gersh Academy is appropriate.

30.  The parents asked me to recommend an appropriate school.  I suggested the parents consider Gersh.

31. Firstly, Gersh specializes in teaching students on the autism spectrum.  Teachers, therapists, and other staff in the school are trained and experienced in working with children on the autism pectrum.

32. Secondly, Gersh employs BCBA's to evaluate specific educational issues, to train and supervise teachers.  Among students on the autism spectrum, each case is unique.  Where individual learning issues arise a BCBA can advise a classroom teacher how to proceed.

33. Thirdly, Gersh follows ABA methodology.  ABA is the only methodology peer reviewed.  Professionals in the field of autism have found Gersh Academy effective.

31.  Four tribunals approved Gersh Academy for this particular student.  Three IHO's have held hearings to evaluate Gersh Academy – IHO Brad Rosken, IHO Jean Marie Brescia, and IHO Lorianne Wolseley.  All three IHO's ruled Gersh appropriate.  The SCO reviewed the

Decision of IHO Brad Rosken. The SRO affirmed IHO Rosken's finding that Gersh academy is appropriate.

**Terence needs 40 hours per week of home-based 1:1 ABA.**

25. For T█████ Gersh Academy offers a wide range of activities. In daily English or in O.T. sessions per week Terence practices handwriting and typing. In 30 minutes per day for life skills, Terence interacts with someone other than his classroom teacher. Terence works in the school office, at the front desk or in the cafeteria. Terence takes 30 minutes for lunch, 30 minutes for PT.

24. Ivar Lovaas, a Norwegian researcher, published a groundbreaking study showing the value of intensive early intervention. In autistic students Lovaas treated with ABA therapy, Lovaas achieved major and lasting gains in intellectual, social, emotional, and educational skills. By the end of treatment, nine of forty students Lovaas treated showed no diagnosable autism. They were "indistinguishable from their typically developing peers". To achieve this amazing result required 40 hours per week of 1:1 ABA therapy. Children who received 40 hours or more of ABA treatment per week had significantly better outcomes than children who received 10 hours or less of ABA treatment per week after 2 or more years of intervention. Lovaas found 47% of children in his experimental group achieved a normal score for intellectual and educational functions compared to 2% of children in the control group. [Lovaas O.I., Behavioral treatment and normal educational and intellectual functioning in young autistic children. *Journal of Consulting and Clinical Psychology.* 1987;55:3–9.

26. A 1993 follow-up study found most students maintained their gains. McEachin J.J,

Smith T, Lovaas O.I. Long-term outcome for children with autism who received early intensive behavioral treatment. *American Journal on Mental Retardation.* 1993;97:359–3720.]

27. In school hours T█████ does not receive the 40 hours per week of ABA therapy Lovaas found effective. At most, during school T███e receives only 10-20 hours of 1:1 ABA instruction. To learn and progress, in addition to what Gersh provides, T██████ needs 20 hours of home-based 1:1 ABA.

## CONCLUSIONS

28. The 2023-2024 IEP overlooks the student's individual diagnosis and circumstances. Following a series of educational disruptions, the student needs stability.

29. Based on my professional experience as a developmental pediatrician, I concur with the many decisions by IHO's and the SRO that Gersh Academy is appropriate.

30. To learn and progress, this particular student needs 20 hours per week of home-based 1:1 ABA instruction.

Karen M. Hopkins, M.D.
Clinical Professor of Pediatrics

Sworn to before me

This _8th_ day of January, 2024

Notary Public

ELIZABETH TAVAREZ
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01TA0004102
Qualified in Kings County
Commission Expires March 28, 2027

8