UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| JERRY GEZA TOTH, *individually and on behalf of T.T.*,<br><br>　　　　　　　　Plaintiff,<br><br>　　　　v.<br><br>NEW YORK CITY DEPARTMENT OF EDUCATION,<br><br>　　　　　　　　Defendant. | **MEMORANDUM & ORDER**<br><br><br>25-cv-003317 (NRM) |

**NINA R. MORRISON**, United States District Judge:

Plaintiff Jerry Geza Toth, for himself and his son T.T., sues the New York City Department of Education (the "DOE") under the Individuals with Disabilities in Education Act, 20 U.S.C. § 1400 *et seq.* ("IDEA"), the Fourteenth Amendment, and related state and federal anti-discrimination laws. 42 U.S.C. § 1201 *et seq.* (Americans with Disabilities Act, or "ADA"); 29 U.S.C. § 794a (Section 504 of the Rehabilitation Act); N.Y.C. Admin. Code § 8-107(17)(a) (New York City Human Rights Law, or "NYCHRL"). Toth seeks an order that would mandate T.T.'s ongoing placement in a private school with twenty hours a week of at-home behavioral therapy. Compl. ¶ 57, ECF No. 1. He says these services are necessary for T.T., who has autism, to receive the benefits of a free and appropriate public education. *Id.* ¶¶ 26, 35–36. Toth also seeks a pendency order, which all parties appear to construe as a claim for reimbursement of T.T.'s educational costs during the 2024–25 school year, a prior period in which Toth claims the DOE improperly refused to fund T.T.'s necessary educational services.

The DOE moves to dismiss the complaint under Federal Rules of Civil Procedure 12(b)(1) and (6), arguing that Toth's claims are non-justiciable, procedurally barred, or simply unavailable under the law. *See generally* Def.'s Mem. of L. in Supp. of Mot. to Dismiss ("DOE Mem."), ECF No. 33-1; Def.'s Reply Mem. of L. in Further Supp. of Mot. to Dismiss ("DOE Reply"), ECF No. 31. In response, Toth argues that his claims should be viewed in tandem with what transpired in earlier-filed proceedings regarding T.T.'s educational rights. *See generally* Pls.' Mem. of L. in Opp'n to Mot. to Dismiss ("Toth Opp'n"), ECF No. 32-2. He contends that the DOE's conduct with respect to those preexisting disputes amounts to a "systemic[ and] ongoing" violation of its legal duties, entitling him to reimbursement for past costs and a prospective injunction securing T.T.'s placement "without limitation to a single year." *Id.* at 22, 28. For the reasons that follow, the DOE's motion is granted.

## BACKGROUND

The following facts are presumed to be true for purposes of the instant motion.[1] *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 106–07 (2d Cir. 2021). T.T. is a high school

---

[1] These facts are drawn from the Complaint and the exhibits attached to it. *See DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010). For purposes of drafting the factual background, the Court also takes judicial notice of "public records," including decisions from Toth's prior related litigation against the DOE. *Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004). Finally, in resolving the instant motion to dismiss, the Court considers evidence of the administrative proceedings that underlie Toth's claim. *See Killoran ex rel. Killoran v. Westhampton Beach Sch. Dist.*, No. 22-CV-01951 (JS) (LGD), 2023 WL 2760773, at *2 n.8 (E.D.N.Y. Mar. 31, 2023) (noting that, when resolving a jurisdictional issue, "a district court . . . may refer to evidence outside the pleadings" (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)); *see also Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153–54 (2d Cir. 2002) (explaining that a court may take notice of extra-pleading materials when deciding a 12(b)(6) motion if the materials are "integral" to the complaint).

2

student with autism.  Compl. ¶ 1.  Before T.T. turned three, a psychologist diagnosed him with autism and recommended he receive individual behavioral therapy services. *Id.* ¶¶ 10–11.  From June 2010 to August 2011 and intermittently thereafter, T.T. has received home-based therapy using the applied behavior analysis method, or "ABA," a modality that employs social stimuli like rewards and consequences to improve behavior and encourage learning for persons diagnosed with autism spectrum disorder.  *Id.* ¶ 11.[2]  Toth alleges that T.T. has thrived with consistent one-on-one ABA instruction, but because of his disability, he cannot learn without this service.  *Id.* ¶¶ 11, 20, 35.

T.T.'s education has been the subject of extensive litigation and administrative proceedings since the beginning of his scholastic career.  *See Toth v. N.Y.C. Dep't of Educ.*, No. 14-CV-3776 (SLT) (JO), 2017 WL 78483, at *2–3 (E.D.N.Y. Jan. 9, 2017) (canvassing T.T.'s early school history and related administrative and Article III proceedings), *vacated and remanded*, 720 F. App'x 48 (2d Cir. 2018) (summary order); *Toth v. N.Y.C. Dep't of Educ.*, No. 21-CV-4245 (AMD) (RER), 2023 WL 121733, at *1–3 (E.D.N.Y. Jan. 5, 2023).  In a series of administrative actions dating back to 2011, Toth challenged the DOE's yearly individualized education programs ("IEPs").  *Toth*, 2023 WL 121733, at *2.  He asserted that those IEPs failed to include the substantial one-on-one  instruction  that  T.T.'s  pediatrician  prescribed,  relegating  T.T.  to educational placements in which he could not learn.  *Id.*

---

[2] Autism Speaks, *Applied Behavior Analysis (ABA)*, https://www.autismspeaks .org/applied-behavior-analysis [https://perma.cc/X3BA-9DJD].

In 2020, a pair of successive administrative adjudications determined that an appropriate educational program for T.T. should include both year-round placement at a private school and some amount of at-home ABA instruction. *See* SRO Decision No. 20-089, at 10, 22, Toth Opp'n Ex. A, ECF No. 32-5. First, on April 20, 2020, an impartial hearing officer ("IHO") ruled that the DOE failed to provide T.T. with sufficient educational services during the 2017–20 school years. *Id.* at 10–12. Among other relief, the IHO awarded Toth prospective tuition at Gersh Academy, a private school utilizing the ABA method, for the 2020–21 school year. *Id.* at 12. The parties cross-appealed, and a state review officer ("SRO") affirmed the IHO's decision. *Id.* at 26. The SRO also awarded T.T. an additional twenty hours a week of one-on-one home-based instruction for 2020–21. *Id.*

While the 2020 proceedings were underway, New York schools closed because of the COVID-19 pandemic, and T.T. missed more school. *See* Admin. Due Proc. Compl. No. 206350, at 2, Toth Opp'n Ex. G, ECF No. 32-11. In January 2021, Toth filed a further due process complaint with the DOE seeking relief for that lost instruction. *Id.* at 1. Alleging that his son could not, in a single year, recover the learning he missed during the public health closures, Toth's 2021 complaint sought compensation for make-up services to use "over the next five years." *Id.* at 4; *see* Decl. of Jerry Toth in Opp'n to Def.'s Mot. to Dismiss ¶¶ 11–12, ECF No. 32-4. Two levels of administrative adjudicators dismissed Toth's request, finding that it was precluded by earlier proceedings relating to the 2019–20 school year which Toth and the DOE had settled. *Toth*, 2023 WL 121733, at *2. Toth initiated a federal lawsuit in

4

response. *Id.* at *3. He claimed, *inter alia*, that T.T. was entitled to compensatory education under the IDEA's pendency provision for the period during the pandemic when he could not attend school. *Id.* at *2. The parties litigated that issue to a settlement in June 2025, after the filing of the instant case. *See* Stipulation of Settlement & Order of Dismissal, Toth Opp'n Ex. I, ECF. No. 32-13.

In spring 2023, while the parties were still litigating Toth's pandemic-related claims, the DOE proposed to move T.T. from Gersh Academy to a public school where he would receive less individualized attention for the 2023–24 academic year. *See* Findings of Fact & Decision in IHO Case No. 24309, at 4, Compl. Ex. 2, ECF No. 1-2. Toth refused the placement. *Id.* He filed another administrative due process complaint charging that the DOE denied T.T. a free and appropriate public education and seeking funding for T.T. to attend Gersh Academy and receive one-one-one ABA therapy for the 2023–24 school year. *Id.* at 3. After a hearing, an IHO awarded the requested relief, ordering the DOE to fund T.T.'s tuition, speech-language therapy, and twenty hours a week of one-on-one ABA therapy for the twelve-month academic year. *Id.* at 12. Neither party appealed. Decl. of Hanna Giuntini in Support of Def.'s Sep. 9, 2025 Letter ("Giuntini Sep. 9, 2025 Decl.") ¶ 3, Sep. 9, 2025 Letter Ex. B, ECF No. 20-2.

Around a year later, the DOE again proposed a public-school placement, which Toth again refused. Compl. ¶¶ 9, 12–13; June 26, 2024 School Location Letter, Compl. Ex C, ECF No. 1-3. Toth noticed the DOE of his intention to keep T.T. in private school for the 2024–25 school year by a ten-day unilateral placement letter.

5

Compl. ¶ 13; Parents' 10-Day Notice of School Placement dated June 18, 2024, Decl. of Andrew Wong, Esq., in Supp. of Def.'s Reply ("Wong Decl.") Ex. A, ECF No. 31-3; *see also* 20 U.S.C. § 1412(a)(1)(C)(iii)(I)(bb).   Thereafter, T.T. continued to attend Gersh Academy and receive therapy services into the summer term.  *See* Decl. of Kate Lieberman ("Lieberman Decl.") ¶ 4, Toth Opp'n Ex. K, ECF No. 32-15; Gersh Academy Invoice, Toth Opp'n Ex. I, ECF No. 32-14.  Although Toth declined the DOE's proposed placement earlier in the year, he did not formally challenge it until August 24, 2024, when he filed a further administrative due process complaint seeking renewed evaluations for T.T., tuition at Gersh Academy for the 2024–25 school year, and funding for twenty hours a week of home-based ABA therapy, among other relief.  Compl. ¶ 14; *see also* Admin. Due Proc. Compl. in Case No. 284080, Wong Decl. Ex. B, ECF No. 31-4.  An IHO dismissed that complaint in April 2025, following a hearing.  Compl. ¶¶ 17–18; *see also* Findings of Fact & Decision in IHO Case No. 284080, Wong Decl. Ex. C, ECF No. 31-5.  Toth filed an administrative appeal, which, according to the DOE, was still pending when he initiated the instant case. *See* Notice of Appeal in Case No. 284080, DOE Reply Ex. A, ECF No. 31-1; Request for Review in IHO Case No. 293154, Wong Decl. Ex. D, ECF No. 31-6.[3]

Another school year began, and Toth again took steps to ensure his son's attendance at Gersh Academy. First, on June 12, 2025, Toth filed his federal

---

[3] After filing his appeal, Toth also requested an order pursuant to 20 U.S.C. § 1415(j), the IDEA's pendency provision, to guarantee T.T.'s attendance at Gersh Academy and ongoing receipt of services while administrative proceedings remained unresolved.  *See* Toth Opp'n Ex. C, ECF No. 32-7; Toth Opp'n Ex. D, ECF No. 32-8. He alleges that the DOE improperly failed to assign a docket number.  Compl. ¶ 19.

complaint in this case.  *See generally* Compl.   Twelve days later, on June 20, he filed the first of two new administrative motions relating to T.T.'s placements.  *See* Ten-Day Notice of Unilateral Placement dated June 20, 2025, Mot. for Settlement of Pendency Order Implementation Ex. B, ECF No. 10-2.  On June 30, 2025, he filed one more administrative due process complaint seeking largely the same services that were ordered in the earlier IHO decision covering the 2023–24 school year — namely, continued placement at Gersh Academy, twenty hours a week of home-based one-on-one ABA therapy, and thirty minutes of daily speech-language therapy.  *See* Admin. Due Proc. Compl. in Case No. 295741, Mot. for Settlement of Pendency Order Implementation Ex. C, ECF No. 10-3.

On July 15, 2025, the DOE agreed to the requested services, retroactive to June 30, 2025.  *See* Pendency Implementation Form, Toth Opp'n Ex. F, ECF No. 32-10; Decl. of Hanna Giuntini in Supp. of Def.'s Opp'n to Pl.'s Mot. for Settlement of Pendency Order Implementation ("Giuntini July 25, 2025 Decl.") ¶ 4, Def.'s July 12, 2025 Letter Ex. B., ECF No. 12-1.

The DOE now moves to dismiss the instant complaint for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) or, alternatively, failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  *See generally* DOE Mem.; DOE Reply.  It argues that (1) Toth's claims with respect to the 2025–26 school year were unripe when this lawsuit was filed, since Toth had not at that point begun his administrative proceedings, and (2) those claims are now moot, since the DOE

has now agreed to provide the requested relief without judicial intervention. *See* DOE Mem. at 12; DOE Reply at 7.

As for Toth's claims seeking reimbursement for educational expenses incurred during the 2024–25 academic year, the DOE contends they are procedurally barred because administrative proceedings tied to that year remain open. *Id.* Finally, insofar as Toth seeks reimbursement for T.T.'s tuition and therapy during the summer of 2024, the DOE argues he is not entitled to any relief since there was no proceeding contesting T.T.'s placement for that year when Toth filed his August 24, 2024 administrative challenge. *See* DOE Reply at 12–20.

## STATUTORY FRAMEWORK

States receiving federal funding under the IDEA must provide all disabled children with a "free and appropriate public education." 20 U.S.C. § 1412(a)(1)(A). This obligation includes a duty to provide each disabled child residing in the state with "special education and related services tailored to meet the[ir] individual needs" and "reasonably calculated to enable the child to receive educational benefits." *C.F. v. N.Y.C. Dep't of Educ.*, 746 F.3d 68, 71–72 (2d Cir. 2014) (quoting *Frank G. v. Bd. of Educ.*, 459 F.3d 356, 363 (2d Cir. 2006)). "The key element of the IDEA is the development of an IEP" for each disabled child. *Frank G.*, 459 F.3d at 363. An IEP contains "a comprehensive statement" of the child's educational needs and "the specially designed instruction and related services to be employed to meet th[em]," which school districts must implement annually. *Sch. Comm. of Burlington v. Dep't of Educ.*, 471 U.S. 359, 367 (1985); *see also* 20 U.S.C. § 1414(d).

8

"New York parents who disagree with their child's IEP may challenge it in an 'impartial due process hearing' before an IHO appointed by the local board of education." *Gagliardo v. Arlington Cent. Sch. Dist.*, 489 F.3d 105, 108 (2d Cir. 2007) (first quoting 20 U.S.C. § 1415(f); then citing N.Y. Educ. L. § 4404(2)). "The resulting decision may be appealed to an SRO, and the SRO's decision in turn may be challenged in either state or federal court." *Id.* (first citing N.Y. Educ. L. § 4404(2); then citing 20 U.S.C. §§ 1415(g), (i)(2)(A)).

"In the normal course, parents may only sue in federal or state court under the IDEA after exhausting these administrative remedies." *J.M. v. N.Y.C. Dep't of Educ.*, 161 F.4th 149, 154 (2d Cir. 2025). This rule extends to plaintiffs proceeding under other federal statutes, provided that the gravamen of their complaint is the alleged denial of a free and appropriate education and the relief they seek would also be available under the IDEA. *Simmons v. Murphy*, No. 23-288, 2024 WL 2837625, at *3–4 (2d Cir. June 5, 2024) (citing *Luna Perez v. Sturgis Pub. Schs.*, 598 U.S. 142, 146–48 (2023)); *see also J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 112 (2d Cir. 2004) (Section 504 and Section 1983 claims that "seek to ensure a" free and appropriate public education must be exhausted under 20 U.S.C. § 1415(*l*)).

The Second Circuit recently clarified that the IDEA's exhaustion requirement is not a limit on federal courts' jurisdiction over IDEA claims, but rather a claim-processing rule designed to channel parental dissatisfaction with a child's individualized educational program through an administrative process that "allows schools and districts to exercise discretion and apply their educational

9

expertise . . . and promotes judicial efficiency." *J.M.*, 161 F.4th at 154.[4]  However, IDEA plaintiffs can bypass that process in certain limited circumstances.  For example, a party need not exhaust administrative remedies if it can show that "(1) it would be futile to resort to the IDEA's due process procedures; (2) an agency has adopted a policy or pursued a practice of general applicability that is contrary to the law; or (3) it is improbable that adequate relief can be obtained by pursuing administrative remedies." *Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*, 297 F.3d 195, 199–200 (2d Cir. 2002) (citing *Mrs. W. v. Tirozzi*, 832 F.2d 748, 756 (2d Cir. 1987)).

Another recognized exception to the exhaustion requirement exists for claims pursuant to 20 U.S.C. § 1415(j), the IDEA's "pendency" or "stay-put" provision. *Murphy*, 297 F.3d at 199–200; *Doe v. E. Lyme Bd. of Educ.*, 790 F.3d 440, 455 (2d Cir. 2015).  The stay-put provision creates a guarantee that "during the pendency of any proceedings conducted pursuant to this section, unless the State or local education agency and the parents otherwise agree, the child shall remain in the then-current educational placement . . . ."  20 U.S.C. § 1415(j). The "then-current educational placement" is the placement that was "last agreed upon for the child." *V.D. v. State*,

---

[4] Earlier Second Circuit cases referred to exhaustion of administrative remedies as a "jurisdictional prerequisite" under the IDEA, suggesting that a "plaintiff's failure to exhaust . . . deprive[d] a court of subject matter jurisdiction" over any IDEA claims. *Ventura de Paulino v. N.Y.C. Dep't of Educ.*, 959 F.3d 519, 530 (2d Cir. 2020); *see also K.M. v. Adams*, No. 20-4128, 2022 WL 4352040, at *3 n.3 (2d Cir. Aug. 31, 2022).

10

403 F. Supp. 3d 76, 84 (E.D.N.Y. 2019) (quoting *E. Lyme Bd. of Educ.*, 790 F.3d at 452).

## LEGAL STANDARDS

### I.    Federal Rule of Civil Procedure 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when [a] district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  The party asserting subject matter jurisdiction bears the burden to prove its existence by a preponderance of the evidence.  *Id.*  And although the court must accept all material factual allegations as true in the complaint, it need not accept "argumentative inferences" in favor of jurisdiction.  *Gater Assets Ltd. v. AO Moldovagaz*, 2 F.4th 42, 57 n.10 (2d Cir. 2021) (quoting *Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.*, 968 F.2d 196, 198 (2d Cir. 1992)).  Courts may consider evidence outside of the pleadings when evaluating a Rule 12(b)(1) motion.  *Makarova*, 201 F.3d at 113.

A court lacks subject-matter jurisdiction over moot claims.  *Stagg P.C. v. U.S. Dep't of State*, 983 F.3d 589, 601 (2d Cir. 2020).  "When the plaintiff no longer has a legally cognizable interest in the outcome of the action, the case becomes moot and is no longer a 'case' or 'controversy' for the purposes of Article III."  *Id.*  "The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed."  *Martin-Trigonva v. Shiff*, 702 F.2d 380, 386 (2d Cir. 1983).

Courts assessing their subject-matter jurisdiction over a claim must also consider whether the plaintiff's claims are ripe for review.   "Ripeness is a constitutional prerequisite to exercise of jurisdiction by federal courts."  *Mendez v.*

11

*Banks*, 65 F.4th 56, 60 (2d Cir. 2023) (quoting *Nutritional Health All. v. Shalala*, 144 F.3d 220, 225 (2d Cir. 1998)).  A cause of action is ripe when it presents a "real, substantial controversy, not a mere hypothetical question."  *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 687 (2d Cir. 2013) (quoting *AMSAT Cable Ltd. v. Cablevision of Conn.*, 6 F.3d 867, 872 (2d Cir. 1993)).  "A claim is not ripe if it depends upon contingent future events that may not occur as anticipated, or indeed may not occur at all."  *Id.* (citation omitted).  A companion to mootness, this doctrine exists to prevent courts, "through avoidance of premature adjudication, from entangling themselves in abstract disagreements."  *Id.*  To that end, a claim is not ripe for review if it "relies on state administrative decisions that have not yet been made."  *Mendez*, 65 F.4th at 61 (quoting *Vill. Green at Sayville, LLC v. Town of Islip*, 43 F.4th 287, 294 (2d Cir. 2022)).

## II.    Federal Rule of Civil Procedure 12(b)(6)

Finally, to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Sacerdote*, 9 F.4th at 106 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  In reviewing a Rule 12(b)(6) motion, court must "construe [the complaint] liberally, accepting all factual allegations therein as true and drawing all reasonable inferences in the plaintiffs' favor."  *Id.*  Even so, speculative inferences, "threadbare recitals," and "conclusory

12

statements" unsupported by specific facts are not entitled to such deference. *Id.* at 678–79; *Watson Lab'ys, Inc. v. Forest Lab'ys, Inc.*, 101 F.4th 223, 235 n.5 (2d Cir. 2024).

## **DISCUSSION**

"Where, as here, the defendant moves for dismissal under Rule 12(b)(1), as well as on other grounds, 'the court should consider the 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined.'" *Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990) (quoting 5 C. Wright & A. Miller, *Federal Practice & Procedure* § 1350 (1969)).

## I.    Toth's claims concerning the 2025–26 school year are moot

The DOE first argues that Toth's demand for a pendency order declaring T.T.'s placement for the 2025–26 school year is moot, because the parties have since agreed to the placement at the administrative level. *See* DOE Mem. at 6. Toth concedes this fact, noting in a June 17, 2025 letter motion to the Court that the parties "succeeded [in] resolv[ing] the pendency issue" while this federal case was pending. Mot. for Settlement of Pendency Order Implementation at 2, ECF No. 10. The same letter motion requested that the Court give its imprimatur to the implementation form memorializing this compromise "[t]o resolve[ and] conclude the pendency issue" for the 2025–26 school year. *Id.* at 3. "Courts have dismissed as moot claims brought under the IDEA where an IHO or SRO has granted the plaintiff's requested relief prior to the court's adjudication." *Ramos v. N.Y.C. Dep't of Educ.*, 447 F. Supp. 3d 153, 157 (S.D.N.Y. 2020) (collecting cases). "Similarly, pendency claims are routinely

determined to be moot where the DOE has fully funded a student's tuition at a private school." *Chaperon v. Banks*, No. 24-CV-05135 (JAV), 2025 WL 2207908, at *7 (S.D.N.Y. Aug. 4, 2025) (collecting cases); *see also Zimmerman v. Banks*, No. 23-CV-5192 (LDH) (PK), 2024 WL 1282660, at *2 (E.D.N.Y. Mar. 16, 2024). Because the pendency implementation order has the same effect as an administrative adjudicator's decision in Toth's favor — and Toth does not argue otherwise — it renders moot Toth's request for a pendency order covering the 2025–26 school year. *See Grullon v. Banks*, No. 23-CV-5797 (JGLC), 2023 WL 6929542, at *5 (S.D.N.Y. Oct 19, 2023) ("[I]f the DOE confirms the pendency determination that [plaintiff] seeks in this action, the claim is moot."). Accordingly, the Court dismisses Toth's federal claims concerning the 2025–26 school year pursuant to Rule 12(b)(1).

## II. Toth's claims concerning future school years are unripe

In opposing the DOE's Rule 12(b)(1) motion, Toth refocuses his argument on what he says are his core claims for relief: reimbursement for T.T.'s tuition and therapy services during the summer of 2024 and a request for a "pendency injunction" covering future years. *See* Toth Opp'n at 17 ("[P]laintiffs have not received relief for the 2024–2025 school year or for the 2026–2027 school year.").

The Court first turns to Toth's request for an order securing T.T.'s attendance at Gersh Academy into the future. The DOE contends that Toth lacks standing to assert this claim since T.T. has not yet suffered an injury-in-fact with respect to future school years. DOE Reply at 9 (citing *Sonterra Cap. Master Fund Ltd. v. UBS AG*, 954 F.3d 529, 533–34 (2d Cir. 2020)). The DOE further argues that Toth's

request for a prospective "pendency injunction" is unripe for largely the same reason that Toth lacks standing: (1) the DOE has yet to propose any placement for the 2026–27 school year or any school year thereafter; (2) Toth has yet to reject any such placement; and (3) any resulting administrative proceedings are yet to be filed or decided, so any controversy regarding T.T.'s future placement necessarily rests on "contingent future events" that may not occur as anticipated. *See Mendez*, 65 F.4th at 61–62 (rejecting argument that "prophylactic relief is warranted because DOE has a track record of making untimely payments and is predestined to do the same here").

Courts within this circuit have repeatedly rejected as unripe IDEA plaintiffs' claims for future pendency payments. *See, e.g.*, *Mendez*, 65 F.4th at 61–62 (concerning future payments within the same year); *Lee v. Banks*, No. 1:23-CV-05800 (JLR), 2024 WL 1657908, at *5 (S.D.N.Y. Apr. 17, 2024) (concerning payments for future years). As in those cases, Toth's "claims are unripe unless and until the DOE violates its legal obligation. For the Court to conclude that the DOE has violated the stay-put provision, the DOE would first have to dispute or deny [T.T.'s] pendency determinations, which it has yet to do . . . if it will at all" for this school year or any later year. *Grullon*, 2023 WL 6929542, at *5–7. Thus, Toth's claim for pendency beyond the 2025–26 school year is unripe.[5]

---

[5] The Court notes that the IDEA's exhaustion requirement may provide an additional, independent basis to dismiss Toth's future-facing pendency claims. The IDEA requires an aggrieved party to exhaust administrative remedies with the state or local educational agency by filing what is known in the IDEA context as a "due process complaint" with the educational agency before bringing a civil action in federal court. *Polera v. Bd. of Educ.*, 288 F.3d 478, 388 (2d Cir. 2002). Courts in this circuit have relied upon this requirement in dismissing claims similar to Toth's. *M.F.*

Because the Court lacks subject-matter jurisdiction over Toth's claim for a future-facing pendency order, it need not reach the DOE's fallback argument that such an order would violate the IDEA. DOE Reply at 10–12 (arguing that a pendency order guaranteeing T.T.'s tuition at Gersh Academy and related therapy services into the future would "allow [Toth] to violate the IDEA by prospectively rejecting IEPs for subsequent years, sight unseen, and continue T.T.'s placement at Gersh Academy without having to properly engage with the IDEA's clinical and administrative processes"). *Id.* Accordingly, the Court dismisses Toth's forward-looking federal claims pursuant to Rule 12(b)(1).

### III. Toth fails to state a claim for reimbursement for educational services during the 2024–25 school year

Toth's sole remaining IDEA claim seeks retroactive reimbursement of T.T.'s tuition and therapy costs for a period during the summer of 2024, when T.T.'s parents bore those costs themselves. The DOE contends that Toth cannot assert T.T.'s pendency rights for this window because no "proceeding" was pending between June 30, 2024, when the 2023–24 school year ended, and August 2024, when Toth filed an administrative complaint challenging T.T.'s placement for the 2024–25 school year. DOE Reply at 12; *see also E. Lyme Bd. of Educ.*, 790 F.3d at 455–56 ("[T]he statute is clear that the Board's obligation to provide stay-put services was not triggered until

---

*v. N. Syracuse Cent. Sch. Dist.*, No. 09-CV-3526, 2019 WL 1432768, at \*7 (N.D.N.Y. Mar. 29, 2019) ("[A] plaintiff cannot seek relief under the IDEA for future school years." (citing *Streck v. Bd. of Educ.*, 642 F. Supp. 2d 105, 108 (N.D.N.Y. 2009)), *overruled on other grounds*, 408 F. App'x 411 (2d Cir. 2010) (summary order)). However, because the Court concludes that Toth's claims are unripe, it does not reach the DOE's exhaustion arguments.

16

the Parent's administrative complaint was filed."); *J.G. v. Kiryas Joel Union Free Sch. Dist.*, 777 F. Supp. 2d 606, 643 (S.D.N.Y. 2011) ("R.G. and J.G. triggered N.G.'s pendency entitlements when they filed the due process demand notice on October 6, 2005."); *de Paulino v. N.Y.C. Dep't of Educ.*, 22-CV-1865 (PAE), 2024 WL 3046025, at *5 (S.D.N.Y. June 18, 2024) ("[T]he genesis of a *pendency* obligation is *the pendency* of a proceeding — either a Due Process Complaint or judicial proceedings.").

Toth does not contest that he first challenged T.T.'s IEP for the 2024–25 school year through an administrative due process complaint filed on August 23, 2024 — that is, after he had already incurred the costs he now seeks to have reimbursed. *See* Toth Opp'n at 14; Admin. Due Proc. Compl. in Case No. 284080. Instead, he asserts several alternative bases for the retroactive "pendency order" he seeks. First, Toth argues that the placement relating to the DOE's pendency obligations during the summer of 2024 was established in the administrative proceedings for the preceding school year. *See generally* Findings of Fact & Decision in IHO Case No. 24309. Although that school year ended on June 30, 2024, Toth asserts that the DOE's alleged failure to involve Toth and his partner (T.T.'s mother Mira) in the formulation of a new IEP, means that no valid placement could result from that process. Toth Opp'n at 18–19.

Toth is correct that, under both the IDEA and its implementing regulations, the parents of each child with a disability must be members of any group that makes decisions regarding that child's placement. 20 U.S.C. § 1414(e); 34 C.F.R. § 300.501(b). But his claim is still barred in this proceeding, because IDEA litigants

17

cannot raise before a federal court in the first instance a question for which exhaustion is required — here, whether the IEP process for a particular year complied with the IDEA — while avoiding the administrative process, and the IDEA's claim-channeling provisions, by repackaging their claim as one for pendency.

Toth next argues that an administrative decision from 2020 (which the DOE did not appeal) and the concurring findings of three subsequent officers established T.T.'s placement for the 2024–25 year, and thus his parents' entitlement to reimbursement. Toth Opp'n at 20 (citing *Ventura de Paulino v. N.Y.C. Dep't of Educ.*, 959 F.3d 519, 532 (2d Cir. 2020)). This approach fails for similar reasons: if a four-year-old administrative determination could fix T.T.'s "then-current placement" through multiple subsequent IEP disputes, those disputes would not have any significance with respect to the years and IEPs that they actually addressed. The predicate question to determining what T.T.'s placement was during the summer of 2024 is whether the IEP process the DOE initiated for that year was valid — and for the Court to reach that question, state administrative officers must consider it first.

Toth last argues that the DOE was obligated to continue paying T.T.'s tuition and services because, throughout the summer of 2024, the parties remained engaged in federal court litigation over an earlier due process complaint that "broadly requested multi-year" relief. Toth Opp'n at 23–26. This argument is unavailing. Importantly, the litigation Toth relies on to advance this theory, docketed in this

18

district at No. 21-CV-4245, concerned a claim for compensatory education[6] to remedy what Toth alleged were violations of T.T.'s right to a free and appropriate public education by depriving him of additional support he required during the COVID-19 pandemic; it was not a lawsuit concerning T.T.'s educational placement. *See* DOE Reply at 13–14. Courts have drawn a distinction between these claims in other contexts to hold that a suit for compensatory education does not carry with it any forward-looking pendency obligations under 20 U.S.C. § 1415(j). *See, e.g., Cosgrove v. Bd. of Educ. of Niskayuna Cent. Sch. Dist.*, 175 F. Supp. 2d 375, 390 (N.D.N.Y. 2001) (claim for compensatory education could not be used to create an ongoing pendency obligation past a child's age of eligibility for services under the IDEA). Toth's earlier lawsuit seeking compensatory education to be used over a five-year period therefore cannot form the basis for pendency during summer 2024. Accordingly, the Court dismisses Toth's federal claims seeking reimbursement for T.T.'s educational services during the summer of 2024 pursuant to Rule 12(b)(6).[7]

---

[6] "'Compensatory education' is prospective equitable relief, requiring a school district to fund education beyond the expiration of a child's eligibility as a remedy for any earlier deprivations in the child's education." *E.M. v. N.Y.C. Dep't of Educ.*, 758 F.3d 442, 451 n.12 (2d Cir. 2014).

[7] While Toth alleges violations of Section 1983, the ADA, and Section 504, his allegations as to these claims mirror his allegations pursuant to the IDEA — specifically, that the DOE failed to provide T.T. with appropriate educational services — and thus appear to be a duplicative repackaging of his IDEA claim. *See generally* Compl. ¶¶ 37–49 (describing these claims). Even if these claims are evaluated individually, however, they fail. First, "the courts have uniformly held that disability discrimination claims cannot proceed under Section 1983 because there are specific statutes that provide for such relief." *Dotson v. City of Syracuse*, 18-CV-750 (MAD) (ATB), 2019 WL 2009076, at *11 (N.D.N.Y. May 7, 2019). Second, both the ADA and Section 504 require plaintiffs to allege discrimination on the basis of disability.

## IV.    The Court declines to exercise supplemental jurisdiction over Toth's state law claim

Finally, now that the Court has dismissed Toth's federal claims pursuant to Rules 12(b)(1) and 12(b)(6), it declines to exercise supplemental jurisdiction over his NYCHRL claim.  "A district court usually should decline the exercise of supplemental jurisdiction when all federal claims have been dismissed at the pleading stage[,]" *Denney v. Deutsche Bank AG*, 443 F.3d 253, 266 (2d Cir. 2006), and the Court finds no cause to depart from that general rule here.  Accordingly, the Court dismisses this state-law claim without prejudice to Toth's ability to pursue it in state court.

/ / /

---

*McElwee v. Cnty. of Orange*, 700 F.3d 635, 640 (2d Cir. 2012).  Toth makes conclusory assertions of discrimination but fails to allege sufficient factual support for these allegations.

## CONCLUSION

As outlined above, the Court lacks subject matter jurisdiction over Toth's request for a pendency order because it is moot as to the 2025–26 school year and unripe as to future ones. Moreover, Toth has not alleged sufficient facts to show that he is entitled to reimbursement for T.T.'s tuition and services during the summer of 2024, as the only "proceeding" that was arguably pending at that time — Toth's federal lawsuit regarding T.T.'s learning loss during the COVID-19 pandemic — involved a retroactive claim for reimbursement rather than a live dispute regarding T.T.'s educational placement. Finally, the Court declines to exercise supplemental jurisdiction over Toth's state-law claim. Accordingly, the DOE's motion to dismiss is granted in its entirety.

**SO ORDERED.**

_/s/ Nina R. Morrison_
NINA R. MORRISON
United States District Judge

Dated:  July 20, 2026
        Brooklyn, New York

21